MOORE *v.* HARRISON.

1. CONSTITUTIONAL LAW—STATE AND FEDERAL CONSTITUTIONS DISTINGUISHED.

   The State Constitution, unlike the Federal, is not a grant of power to the legislature but a limitation upon it.

2. SAME—ONE ALLEGING UNCONSTITUTIONALITY OF STATUTE HAS BURDEN OF PROOF—PRESUMPTIONS.

   Where the constitutionality of a law is attacked, the burden is on him who attacks to point out with certainty the constitutional provision which it violates, since there is always a presumption that it is valid.

3. DRAINS—POLICE POWER.

   The authority of the State to legislate upon the subject of drains arises from an exercise of its police power.

4. SAME—CONSTITUTIONAL LAW—STATUTES—PAYMENT OF DRAIN ORDERS FROM GENERAL FUND VALID.

   Act No. 142, Pub. Acts 1919, as amended by Act No. 64, Pub. Acts 1921, amending the general drain law (1 Comp. Laws 1915, § 4922), providing that the holder of a drain order may require payment thereof out of any moneys in the general fund of the county treasury if the drain fund is insufficient for such purpose because of delinquency in the payment of drain taxes after the lands on which said taxes shall have become delinquent have been offered for sale, *held*, not unconstitutional as in violation of article 8, or section 16, Art. 2, of the State Constitution, or article 14 of the Federal Constitution, but was within the power of the legislature to enact.

5. SAME—GENERAL DRAIN LAW—TITLE OF ACT—SUFFICIENCY.

   Since the title of the general drain law (Act No. 254, Pub. Acts 1897, 1 Comp. Laws 1915, § 4870 *et seq.*) expresses but one general object, the construction of drains, and, incidental thereto, provision is made for the assessment and collection of taxes to meet such construction, and the provision in said amendment (Comp. Laws Supp. 1922, § 4922) is but a means to aid in the accomplishment of the

general object, it cannot be said that the amendment is in conflict with section 21, Art. 8, of the Constitution.

6. SAME—STATUTES—RETROACTIVE LEGISLATION.
  Since the amendment is remedial in its nature and is not by its terms limited to orders issued since its enactment, its provisions are *held,* applicable to orders issued before its enactment.

7. SAME—CONSTITUTIONAL LAW—AUDITING PRIVATE CLAIMS.
  Since no question of the auditing or allowing of private claims is involved, the objection that said amendment violates section 34, Art. 5, of the Constitution is without merit.

8. STATUTES—CONSTITUTIONAL LAW.
  The hardship, impolicy, or injustice of State laws is not necessarily an objection to their constitutional validity. FELLOWS and MOORE, JJ., dissenting.

Certiorari to Midland; Browne (Clarence M.), J., presiding. Submitted April 10, 1923. (Calendar No. 30,662.) Decided October 1, 1923.

Mandamus by W. Victor Moore to compel Henry W. Harrison, treasurer of Midland county, and another to pay certain drain orders. From an order denying the writ, plaintiff brings certiorari. Reversed and remanded.

*Gilbert W. Hand,* for appellant.

*Chester E. Morris,* Prosecuting Attorney, and *Gilbert A. Currie,* for appellees.

SHARPE, J. What is known as the South Carl drain was constructed in the county of Midland in 1914 at a cost of $36,800. Certain of the lands in the special assessment district were returned delinquent and were afterwards, under the usual tax proceedings, offered for sale and bid in by the State. Certain descriptions have since been deeded to the State and have become

224—Mich.—33.

State tax homestead lands.     Plaintiff is the owner of two orders issued for materials used in the construction of the drain, amounting to $410, and which have not been paid, owing to the failure to collect the taxes assessed therefor.

Act No. 142 of the Public Acts of 1919, as amended by Act No. 64 of the Public Acts of 1921 (Comp. Laws Supp. 1922, § 4922), being an amendment to section 4922, 1 Comp. Laws 1915 (the drain law of the State), added the following language to the section:

"*Provided further,* That the holder of such order may, if he so desires, have the right to require payment thereof out of any moneys in the general fund of the county treasury that may be available, if the drain fund is insufficient for such purpose because of delinquency in the payment of drain taxes after the lands on which the said taxes shall have become delinquent have been offered for sale.     In any such case where payment is made by the county treasurer out of the general fund any and all delinquent drain taxes received by said treasurer thereafter shall be credited to the general fund until the same is reimbursed.     In all cases where bonds are issued and sold as herewith provided and the proceeds thereof are deposited in the county treasury to the credit of the fund of the particular drain, orders presented on such fund shall be paid out of the proceeds aforesaid, or out of the first annual installment of the taxes.     In no case where there are outstanding bonds shall an order be paid out of any installment of taxes collected other than the first."

Plaintiff's demand on the county treasurer for payment of his orders out of the general fund of the county was refused and mandamus was sought to compel payment.     The defendants, answering, admitted the allegations in the petition but denied liability on the part of the county for the reasons, *first,* that the amendment is unconstitutional, and, *second,* that it does not apply to orders issued before its enactment.

The trial court agreed with both of these defenses

and dismissed the petition. His action is here reviewed on certiorari.

The claim of the defendants is thus stated:

"*First:* That it violates article 8 of the Constitution relative to local self-government.

"*Second:* That it violates section 16 of article 2 of the Constitution of Michigan and article 14 of the Constitution of the United States which prohibits the taking of property without due process of law.

"*Third:* That the title of the act is insufficient for the purposes sought and conflicts with section 21 of article 8 of the Constitution providing that 'no law shall embrace more than one object which shall be expressed in its title.'

"*Fourth:* That if held constitutional, said act must be construed as prospective and cannot relate to or affect the drain orders in question or any transaction prior to the effective date of said act in 1919.

"*Fifth:* That it violates section 34 of article 5 which provides 'that the legislature shall not audit or allow any private claim or account.'

"*Sixth:* That it is contradictory, incomplete, uncertain, inoperative and void."

Our State Constitution, unlike the Federal, is not a grant of power to the legislature but a limitation upon it. When a law is attacked as beyond the power of the legislature to enact, there is always a presumption that it is constitutional and valid and the burden is on him who asserts that it is not to point out with certainty the constitutional provision which it violates. *Scott* v. *Smart's Ex'rs,* 1 Mich. 295, 307; *Sears* v. *Cottrell,* 5 Mich. 251, 259; *Tabor* v. *Cook,* 15 Mich. 322, 325; *Osborn* v. *Charlevoix Circuit Judge,* 114 Mich. 655; *Albert* v. *Gibson,* 141 Mich. 698; *Cummings* v. *Garner,* 213 Mich. 408.

The drain law now in force was enacted in 1897 (Act No. 254). In the 1915 compilation it appears as section 4870 *et seq.* The authority of the State to legislate upon the subject arises from an exercise of its

police power. The first section of the act limits its application to proceedings "conducive to the public health, convenience or welfare." The first law on this subject enacted in the State (chap. 131, Rev. Stat. 1846) provided for proceedings by a township drain commissioner. As the lands to be benefited were frequently situate in more than one township, and the excess water sought to be removed occasionally had its rise at a distance quite remote from the lands particularly submerged and larger areas were consequently found to be benefited, the legislature, in its wisdom, provided for the election of a county drain commissioner, prescribed his duties and set forth with much particularity the proceedings under which a drain could be constructed and a tax levied and collected to pay for it. The commissioner is elected as are other county officers. He must execute a bond to the people of the State, to be approved by the board of supervisors. He must keep official records and make annual reports to the board, by whom his salary is fixed and his expense accounts audited and paid. The forms to be used are to be prepared by the attorney general and published with the law in pamphlet form by the secretary of State. The necessary books, blanks and stationery for his use are to be provided by the county clerk. He may apportion a percentage of the cost of the drain upon any township "by reason of the benefit to the public health, convenience or welfare" of its inhabitants or "as the means of improving any highway" (§ 4906). This section also provides:

"Where any portion of a highway is at the present time or may be in the future taken under the control of the county or district road commissioners, the county drain commissioner shall have the power to assess such highway a just apportionment of the benefits of construction of such drain, and the said county or district road commissioners shall receive notice of same as provided in section one of chapter

five, and have the same right of appeal as provided by section two of chapter five.  The board of supervisors, at its October meeting of each year, shall provide for the payment of said apportionments."

Section 4956 provides that when jurors or special commissioners render service and the drain is not constructed, the charges provided therefor in the act shall be audited and allowed by the board of supervisors and "paid from the contingent fund of said counties." Under section 4963 the boards of supervisors in several of the counties are authorized to prescribe certain additional conditions to be complied with before contracts shall be let.

These references to the statute but indicate the importance attached to the subject of drainage by the legislature from time to time.  In providing for the manner in which the cost of the drain should be paid, it could but have been apparent that such cost must necessarily be greatly increased, owing to the uncertainty in the time when all of the orders issued by the commissioner should be paid.  To overcome this, it was provided that orders issued, but not paid, owing to delinquency in the payment of taxes, should, after presentment for payment, bear interest.  To secure still greater certainty, the amendment in question was enacted.  The intent of the legislature was, we think, clearly apparent.  There was no purpose to impose a tax on the county at large to aid in the construction of a particular drain.  Under the proceedings taken, the lands specially assessed would be benefited to the amount of the assessment.  There was no presumption that they would be abandoned by the owners by reason thereof.  The intent as evidenced by the language of the act, considered in the light of its other provisions, was simply to require the county to advance out of its general fund sufficient sums to retire any orders then unpaid, reimbursing itself when the

lands delinquent were either redeemed or sold. The legislature had already imposed certain expenses on the county, presumably in its interest, and for which it would receive benefit. In imposing this additional burden, we do not think it exceeded its power.

In 15 C. J. p. 581, it is said:

"The revenues of a county are not the property of the county in the sense in which the revenue of a private person or corporation is regarded. A county being a public corporation existing only for public purposes connected with the administration of a State government, its revenue is subject to the control of the legislature, and when the legislature directs the application of a revenue to a particular purpose, or its payment to any party, a duty is imposed and an obligation created on the county. * * * Such legislative power and control is subject to restrictions and prohibitions contained in the State Constitution."

The tax laws have frequently provided that some one of the agencies concerned in their collection should bear the burden of temporarily making up any delinquencies in payment.

"Sec. 74. Every county treasurer who shall have received into the treasury of his county sufficient to make up the amount of taxes assessed for township and county purposes shall make returns, at least once in three months, to the auditor general, and shall pay to the State treasurer, at such times and in such manner as he shall direct, the amount received by him for delinquent taxes, payable to such State treasurer."

"Sec. 76. Immediately after the returns of the several township treasurers to the county treasurers, in all cases where the amount collected shall exceed the amount raised for county and township purposes, the county treasurer shall forthwith pay into the State treasury the excess collected as aforesaid, for which amount the said counties shall be credited by the auditor general, on account of the State tax, for the proper year." Act No. 169, Laws of 1869.

"Sec. 41. In case the township treasurer shall not

collect the full amount of taxes required by his warrant to be paid into the township treasury, such portion thereof as he shall collect shall be retained by him, and paid out for the following purposes and in the following order, viz.:

"*First,* The amount raised for school purposes, to be paid on the order of the school district officers;

"*Second,* The amount raised for the general township purposes, to be paid on the order of the township board;

"*Third,* The amount of the highway taxes, to be paid on the order of the commissioner of highways."

"SEC. 43. Within one week after the time specified in his warrant, the town treasurer shall pay to the county treasurer all State and county taxes collected, except that from the State and county taxes collected he may retain a sum sufficient to fill any deficiency in the sum collected for school purposes, but the amount so retained shall not exceed the total delinquent school taxes returned, and the county treasurer shall retain the amounts thus reserved out of the first moneys received by him from any township taxes." * * * Act No. 153, Pub. Acts 1885.

We find no purpose or intent in any of these statutes to impose a tax on the township, county or State other than that which it should justly bear. The greater need of securing early payment to those for whose benefit a particular tax was spread was the appealing factor. There has been much legislation in this State of the same character. Act No. 253, Pub. Acts 1917 (Comp. Laws Supp. 1922, § 4747 [10]), authorizes the transfer of moneys from the general fund of counties to the county road fund for the construction, maintenance and repair of highways under the supervision and direction of the board of county road commissioners. Act No. 41, Pub. Acts 1919 (Comp. Laws Supp. 1922, § 772), amending section 772, 1 Comp. Laws 1915, provides that the expense incurred by fire wardens in extinguishing fires shall be first paid by township treasurers, reimbursement being made by

the State later on the presentment of proper vouchers therefor.

We think the amendment was clearly within the power of the legislature to enact.

The title of the general drain law is:

"An act to provide for the construction and maintenance of drains, and the assessment and collection of taxes therefor, and to repeal all other laws relative thereto."

There is but one general object, the construction of drains. Incidental thereto, provision is made for the assessment and collection of taxes to meet the cost of such construction. The provision in the amendment is but a means to aid in the accomplishment of the general object. In *Hall* v. *Slaybaugh*, 69 Mich. 484, where the title to the then drain law, worded as is this, was attacked, it was said:

"It is difficult to conjecture anything pertaining to a drain in any way, that would not come properly under this title if made the subject of legislation."

In *Loomis* v. *Rogers*, 197 Mich. 265, a case involving the validity of the Covert act, the sufficiency of the title to the act and the claim that it violated the constitutional provisions protecting local self-government were considered and discussed in an exhaustive opinion, written by Mr. Justice STEERE. See, also, *Township of Stambaugh* v. *Iron County Treasurer*, 153 Mich. 104, 108.

It is contended that the provisions of the amendment do not apply to orders issued before its enactment. In terms it provides that the holder of an order, after a time definitely fixed, shall have the right to require its payment by the county treasurer. It contains no language, such as "hereafter" or "after this act shall take effect," indicating an intent that it should not apply to orders already issued. The reasoning in

*Township of Clearwater* v. *Board of Sup'rs of Kal-kaska Co.*, 187 Mich. 516, 521, is instructive:

"The rights and duties of these municipalities are not based on any contractual relations. They are organizations purely for public purposes, and their powers, rights, and duties may at any time be modified or abolished by legislation. A law is not retrospective, in a sense forbidding it, because a part of the requisites for its action and application is drawn from a time antedating its passage. It was within the power of the legislature to provide, in consideration of previous expenditures for State reward roads and county road taxes paid out of proportion to benefits, that the township should under certain contingencies have, through a process of rebate, relief in part from the burden of such taxation for a time thereafter."

In 36 Cyc. p. 1209, it is said:

"In accordance with the general rule that remedial statutes should be given a liberal construction, they will be freely construed to have a retrospective operation whenever such seems to have been the intention of the legislature, unless such a construction would impair the validity of contracts, disturb vested rights, or create new obligations."

The amendment is remedial in its nature, and we think its provisions applicable to orders issued before its enactment.

No question of the auditing or allowing of private claims is involved. The provision for payment is followed by authority to the county treasurer to reimburse the general fund from the taxes when received. This can be accomplished by a simple process of bookkeeping. He is not required to exercise any judgment in the allowance or disallowance of claims in doing so.

It must be borne in mind that the objections to this amendment must be considered by us as of the date when it took effect. We are only concerned with the

power of the legislature in its enactment.   On its face it is not apparent that any hardship or injustice would be likely to result.   That such a result may follow, or has followed, is not a sufficient reason for declaring the amendment unconstitutional.

"The hardship, impolicy, or injustice of State laws is not necessarily an objection to their constitutional validity."   *Missouri-Pacific R. Co.* v. *Humes,* 115 U. S. 512, 520 (6 Sup. Ct. 110).

"For protection against abuses by legislatures the people must resort to the polls, not to the courts." *Munn* v. *Illinois,* 94 U. S. 113, 134.

The order denying the writ of mandamus will be set aside and the case remanded for further proceedings in conformity with this opinion.

McDONALD, CLARK, BIRD, and STEERE, JJ., concurred with SHARPE, J.

FELLOWS, J. (*dissenting*).   This record aptly discloses the effect, the practical working out of this statute.   Lands were returned for special assessments on the South Carl drain in the amount of $4,750.88, and but $22.08 of this amount has since been paid. Some of the descriptions have been deeded to the State and others probably will be.   This leaves $4,728.80 which has been assessed against the lands of individual owners unpaid, and if the legislation is valid will require the county of Midland to pay from moneys raised for general purposes of the county this sum with almost a certainty of never being reimbursed.   Obviously if the general fund of the county is thus depleted it must be replenished by tax on the general property of the county in order that the county may continue to function.   Manifestly then in its ultimate results the measure is a taxation measure levying upon the taxable property of the county a tax to pay the delinquent special assessments of individual owners

of lands in the assessment district. The power to tax is plenary, but it is fundamental that the taxpayer, overburdened as he is today, can only be required to pay for a public purpose. In a line of decisions of this court beginning with *Dawson* v. *Township of Aurelius*, 49, Mich. 479, and concluding with *Township of Cooper* v. *Little*, 220 Mich. 62, this court has held that aside from benefits to the public health and later from benefits to the public highways the construction of a drain is a neighborhood affair to be paid for by the levy of special assessments on the lands benefited and that the municipality is not concerned with the fiscal affairs of a drain.

In the last cited case it was said:

"In *Cilley* v. *Sullivan*, 187 Mich. 447, we followed *Attorney General* v. *McClear*, 146 Mich. 45, in holding that in so far as matters of public health were concerned the county drain commissioner performed a State function, but neither of the cases had under consideration the question of the fiscal affairs of drain proceedings. In a long line of cases beginning with *Dawson* v. *Township of Aurelius*, 49 Mich. 479, this court has uniformly recognized that the fiscal affairs of a drain were separate and distinct from the general fiscal affairs of the municipality and that the municipality was not bound or obligated by the acts of the drain commissioner."

That case and the authorities there cited demonstrate that this court from the beginning has consistently ruled that the expense of drainage could not be levied upon the public beyond the amount the public was benefited originally by reason of benefit to the public health and later by reason of benefit to highways. In *Kinnie* v. *Bare*, 68 Mich. 625, it was said by Justice CHAMPLIN, speaking for the court:

"Drain laws which take from the citizen his private property against his will, can be upheld solely upon the ground that such drains are necessary for the public health. They proceed upon the basis that low,

wet, and marshy lands generate malaria, causing sickness and danger to the health and life of the people; that when they are of such character as to injure the health of the community, they become and are public nuisances, which ought to be abated, and the legislature have the right, under the police power inherent in every government, to protect the people from plague and pestilence, and to preserve the public health.    But drainage for the purpose of private advantage, such as improving the quality of the land, or rendering it more productive or fit for cultivation, cannot be justified under the police power.    Neither public convenience nor public welfare, independent of considerations of the public health, will justify the legislature in the enactment of laws—

" 'For the construction and maintenance of drains, and the assessment of taxes therefor.'

"It is evident that where the public health is not affected by the existence of low, swampy land, the only object to be accomplished by their drainage is the improvement of the land itself.    The State is prohibited from engaging in such schemes of internal improvement by article 14, § 9, Const., which provides:

" 'The State shall not be a party to, or interested in, any work of internal improvement, nor engaged in carrying on any such work, except in the expenditure of grants to the State of land or other property.'

"*Ryerson* v. *Utley*, 16 Mich. 269; *People* v. *Salem*, 20 *Id.* 452 (4 Am. Rep. 400) ; *Bay City* v. *State Treasurer*, 23 *Id.* 499; *Thomas* v. *Port Huron*, 27 *Id.* 320; *Hubbard* v. *Springwells*, 25 *Id.* 153; *Benjamin* v. *Improvement Co.*, 42 *Id.* 628; *Anderson* v. *Hill*, 54 *Id.* 477.

"If private interests are solely involved no authority exists in the legislature to tax any person, either to compensate the owner for lands taken, or to pay for constructing the drain.    *People* v. *Salem,* 20 Mich. 452; *Anderson* v. *Hill,* 54 *Id.* 477."

After the decision in that case went down the Constitution was changed (§ 14, art. 10), so that the

public may be assessed in drain proceedings for benefits to highways.

That the legislature may constitutionally require the general taxpaying public to pay towards the construction of a drain for all the benefits which accrue to the public health and to the public highways is beyond question, but when the general taxpaying public has paid for both such benefits all that has been assessed against it, it is in my judgment beyond the constitutional power of the legislature to require such general taxpaying public to make up the delinquencies of individual landowners either by direct appropriation or by a forced loan from the general funds.

The fact that other provisions of the drain law conflict with the Constitution does not save this one. Nor do I attach any significance to the fact that the salary and expenses of the drain commissioner, selected to administer this law, are made county charges. The salary and expenses of the judge of probate are public charges but no one would contend for a moment that the legislature could validly provide that the general funds of the county should be loaned or used to pay the indebtedness of estates being administered in the probate court. So far as the school moneys are concerned it is sufficient to say that the purpose is a public one in its entirety.

But if the legislature may validly require the payment of the claims of drain contractors from the general fund of the county such claims then become claims against the county and must be audited by the board of supervisors as provided for in section 9 of article 8 of the Constitution which in part reads as follows:

"\* \* \* The boards of supervisors, or in counties having county auditors, such auditors, shall adjust all claims against their respective counties; appeals may be taken from such decisions of the boards of super-

visors or auditors to the circuit court in such manner as shall be prescribed by law."

The act in question does not require these claims to be audited by the board of supervisors and the claim in the instant case was not so audited or presented for audit.

In my opinion the judgment of the trial court was right and should be affirmed.

Moore, J., concurred with Fellows, J.    Wiest, C. J., did not sit.