BAY CITY DREDGE WORKS *v.* FOX.

DRAINS—PAYMENT OF DRAIN ORDERS—"AVAILABLE" FUNDS—MAN-
DAMUS.

> Money in the general fund of a county treasury needed to pay
> salaries of county officers and current expenses is not "avail-
> able" to pay drain orders within the meaning of Act No. 316,
> Pub. Acts 1923, chap. 9, § 4, as amended by Act No. 365,
> Pub. Acts 1925; "available" being employed in said statute
> in its sense of usable; and therefore mandamus requiring the
> payment of drain orders out of such funds was properly re-
> fused. NORTH, C. J., and McDONALD and SHARPE, JJ., dis-
> senting in part.

Certiorari to Bay; Houghton (Samuel G.), J.
Submitted October 2, 1928.   (Calendar No. 33,811.)
Decided January 7, 1929.

Mandamus by the Bay City Dredge Works to com-
pel Charles L. Fox, county clerk, and James W.
Rusling, county treasurer, to pay certain drain
orders.  From an order denying the writ, plaintiff
brings certiorari.  Affirmed.

*E. M. Sharpe,* for appellant.

*Frank C. Patterson,* Prosecuting Attorney, for ap-
pellees.

WIEST, J.  Plaintiff holds drain orders, issued by
the drain commissioner for Bay county, in the matter
of constructing Pinconning and Indian Town drains.
April 25, 1927, the drain fund being deficient, plain-
tiff demanded payment out of moneys in the general
fund in the county treasury, basing right thereto
under Act No. 316, Pub. Acts 1923, chap. 9, § 4, as

amended by Act No. 365, Public Acts 1925, and reading as follows:

"The holder of such order may if he so desires have the right to require payment thereof out of any moneys in the general fund of the county treasury that may be available."

The county clerk refused to draw orders on the treasury, and the treasurer refused to make payment out of the general fund of the county. In the circuit court plaintiff was refused a peremptory writ of mandamus directing the clerk to draw orders and the treasurer to make payment. Plaintiff reviews by certiorari, claiming right to be paid out of any money in the general fund. Such contention ignores the condition that money must not only be in the treasury, but as well be available for payment of drain orders.

In response to an order to show cause in the circuit, the clerk and treasurer set up the fact that, on the day plaintiff made demand, there was but $35,827.63 in the general fund, and that sum was $54,770.60 short of the amount necessary to meet the current county expenses for the year 1927. The fund then in the treasury was not sufficient to meet the salaries of county officers for the balance of the year 1927. This showing of deficit was unquestioned, and the circuit judge held that the money in the general fund, being insufficient to meet current expenses of the county for the year, was not available for payment of the drain orders. If the circuit judge was right in point of law in so deciding we need not consider other questions urged in support of his denial of the writ of mandamus.

The statute places a limitation upon the right to have payment, contemplates there may be moneys

in the treasury not to be so used, for it confines payment out of funds usable for such purpose. The term "available" is employed in the statute in its sense of usable. The statute does not grant plaintiff right of recourse to any and all moneys in the treasury, but limits resort to such only as are available for the payment of drain orders. The moneys in the treasury, raised by taxation to meet ordinary current county expenses, and needed for such purpose, are set apart to such use and are not usable to pay drain orders. If moneys in the county treasury are insufficient in amount to meet ordinary current expenses then there is no money available for the payment of drain orders. It was not intended that the county borrow money to pay drain orders; neither was it intended that money on hand to meet ordinary current county expenses be used to pay drain orders and the county be left to borrow money to meet the deficit.

The drain orders here involved are not obligations of the county to be met by tax levy, neither may moneys in the treasury, raised by tax for ordinary county expenses, be used to pay drain orders to the depletion of county funds below need for ordinary current county expenses. The condition that moneys in the treasury be available was fixed advisedly and must be accorded its protective purpose. The term "available" is employed in a restrictive sense and opens the fund for the purpose of drain orders only in case the moneys on hand are capable of use for such purpose, and this requires consideration of the nature and extent of the fund and present and prospective demands upon the same for ordinary current county expenses.

The record discloses that the moneys in the fund are not capable of being used to accomplish the pur-

pose sought by plaintiff. The statute states and intends that drain orders be paid out of any moneys in the general fund of the county treasury that may be available, and that means out of moneys capable of use for such purpose, and does not mean payment out of any moneys in the treasury whatsoever, regardless of ordinary current county needs and expenses.

The ruling in the circuit court is affirmed, with costs against plaintiff.

FEAD, FELLOWS, CLARK, and POTTER, JJ., concurred with WIEST, J.

SHARPE, J. (dissenting). The validity of the statutes requiring payment of such drain orders out of county funds has been sustained by this court in *Moore* v. *Harrison*, 224 Mich. 512, and in *Graves* v. *Bliss*, 235 Mich. 364. The purpose is apparent. If bidders on county drains understand that they must themselves bear the loss incident to the collection of the tax spread to pay therefor, the cost will be much increased. In the first of these cases, the following from 15 C. J., p. 581, was quoted with approval:

"A county being a public corporation existing only for public purposes connected with the administration of a State government, its revenue is subject to the control of the legislature, and when the legislature directs the application of a revenue to a particular purpose, or its payment to any party, a duty is imposed and an obligation created on the county."

Under the construction placed upon the language of the act by Mr. Justice WIEST, its enforcement will in many cases be impossible and the provision for

payment a nullity. It is perhaps the common practice for boards of supervisors, before voting a county tax to be spread upon the assessment rolls, to make or have made an estimate of the probable amount needed for the following year. Certain of the items therein are fixed charges. These are spoken of in defendants' return to the order to show cause as "county appropriations." The other sums voted are, as also stated therein, for "current expenses." The moneys in the treasurer's hands to meet the former are not "available" for any other purpose. The moneys in his hands for current expenses are "available" for any purpose for which they may lawfully be paid out by him.

The legislature in its wisdom, and under the authority conferred upon it by law, directs the county treasurer to pay the orders in question "out of any moneys in the general fund of the county treasury that may be available." The fact that in the judgment of the treasurer the moneys in his hands to meet "current expenses" are likely to be much overdrawn before another tax is levied in no way relieves him from compliance with the legislative command. Under it such payment is just as much required of him as is that of any warrant drawn by order of the board of supervisors thereon. When the moneys in his hands have not been appropriated for a fixed purpose, that is, to meet a contractual or statutory obligation of the county, he may not discriminate in the making of such payments. An appropriate definition of the word "available," as here used, is, "capable of being used for the accomplishment of a purpose." Webster.

Section 2274, 1 Comp. Laws 1915, as amended by Act No. 69, Pub. Acts 1925, authorizes the boards of supervisors, in the tenth subdivision thereof—

"To direct and provide for the raising of any money which may be necessary to defray the current expenses and charges of said county, and the necessary charges incident to or arising from the execution of their lawful authority, subject to the limitations prescribed in this act: *Provided,* That the said several boards of supervisors shall have power to borrow in any year, in anticipation of the levy or collection of taxes for the same year, such sum of money, not exceeding fifty *per centum* of the tax to be levied or collected for the general fund of said county, as may be necessary to defray current expenses of said county. The money so borrowed shall be repaid from such tax when levied and collected."

Any shortage in the moneys in the treasurer's hands "to defray the current expenses" of the county may thus be provided for.

In so enacting, the legislature assumed, as it had the right to assume, that a sufficient sum had been voted by the board of supervisors to pay the fixed charges, those arising out of contract or payable by statute, for the succeeding year. But it also assumed, as is the well-known fact, that the estimates of the amount of the current expenses of a county submitted to the board, and on which it bases the amount of tax to be levied therefor, are uncertain, and, in the event that the sum collected is insufficient therefor, the board is authorized to borrow money to meet such shortage.

The answer of the defendants discloses that $79,075 was voted for the salaries of county officers for the year 1927. It also discloses that the total amount in the general fund at the time the orders in question were presented for payment, on April 25, 1927, was but $35,827.63. Clearly, there was not sufficient money in the treasury of the county to pay such salaries for the balance of the year.

The order of the circuit judge states that there was "testimony taken in open court." It has not been returned to this court. Basing decision entirely on the facts disclosed in the return of the defendants to the order to show cause, the order denying the writ should be affirmed, with costs to appellees.

NORTH, C. J., and McDONALD, J., concurred with SHARPE, J.