REGENTS OF UNIVERSITY OF MICHIGAN *v.* PRAY.

1. Constitutional Law—Drain Law—Provision for Issuing Bonds—Sufficiency of Title.
    Provision in drain law for issuing bonds is so clearly and necessarily germane to general provisions of act having to do with construction and maintenance of drains and assessment and collection of taxes therefor that failure of title to refer to bonds does not render act unconstitutional (Act No. 316, Pub. Acts 1923, as amended by Act No. 365, Pub. Acts 1925).

2. Same—Codification of Drain Law.
    Statute codifying drain law necessarily embodied various and somewhat diversified provisions of drain law, but, as against objections raised, act *held*, not to violate Constitution (article 5, § 21) in that it embraces more than one object or that title is deficient because not sufficiently broad to cover provisions of act (Act No. 316, Pub. Acts 1923, as amended by Act No. 365, Pub. Acts 1925).

3. Same—Sufficiency of Title.
    Title of act which fairly apprises legislators and public generally of purposes of act as whole is sufficient.

4. Same—Provisions Germane to General Purpose of Act.
    If title is adequate, and statute contains only that which is germane to its general purposes, it does not offend Constitution (article 5, § 21), which provides that no law shall embrace more than one object, which shall be expressed in its title.

5. Same—Drain Law—Sufficiency of Title—Payment of Drain Bonds from General Fund.
    Amendment to drain law providing for payment of bonds and interest from county general fund in case drain fund is insufficient, *held*, not unconstitutional for insufficiency of title as against objections urged (Act No. 331, Pub. Acts 1927, chap. 10, § 15; 1 Comp. Laws 1929, § 4937).

6. Same—Amendment—Ex Post Facto Law.
    Amendment to drain law providing for payment of bonds and interest from county general fund in case drain fund is in-

sufficient is applicable to bonds issued before its enactment; and objection that, so construed, it is *ex post facto* law, and therefore unconstitutional, is without merit (Act No. 331, Pub. Acts 1927, chap. 10, § 15; 1 Comp. Laws 1929, § 4937).

7. DRAINS—OBLIGATING COUNTY TO PAY BONDS—STATUTES.

Contention of county officers that, because county is not authorized to construct drain at county expense, it follows that drain commissioner, acting for and in behalf of drain district in issuing bonds, cannot obligate county for their payment, *held,* not sustainable, since payment by county is only temporary advancement, and payment eventually is by drainage district (Act No. 331, Pub. Acts 1927, chap. 10, §§ 15, 18; 1 Comp. Laws 1929, §§ 4937, 4940).

8. MANDAMUS—REQUIRING COUNTY OFFICERS TO PAY DRAIN BONDS FROM GENERAL FUND.

Where, at time certain drain bonds and interest came due, there was insufficient money in drain fund to pay same, and, notwithstanding there was in county general fund more money than required to make such payment, county officers refused to pay, mandamus to compel payment was proper remedy; record presenting clear legal duty on part of county officers to make payment and clear legal right on part of bondholders to have such duty performed (Act No. 331, Pub. Acts 1927, chap. 10, § 15; 1 Comp. Laws 1929, § 4937).

Appeal from Washtenaw; Moll (Lester S.), J., presiding. Submitted June 13, 1933. (Calendar No. 36,872.) Decided December 5, 1933.

Mandamus by Regents of the University of Michigan, a constitutional corporation, against Claramon L. Pray, Washtenaw county clerk, and others to compel payment of certain drainage district bonds and interest from general fund. Writ granted. Defendants appeal. Affirmed.

*Burke & Burke (Jacob F. Fahrner,* of counsel), for plaintiff.

*Albert J. Rapp,* Prosecuting Attorney (*Carl H. Stuhrberg,* of counsel), for defendants.

North, J.   This is a mandamus proceeding by which plaintiff seeks to compel payment of drain bonds from general funds of Washtenaw county, relying particularly upon that portion of. 1 Comp. Laws 1929, § 4937, which reads:

"In case the amount available in the drain fund shall be insufficient to pay the principal or interest of any such bonds heretofore or hereafter issued when they become due the same' shall be advanced and paid by the county out of its general funds and reimbursement to said general fund shall be made out of the drain taxes thereafter collected."

After hearing in the circuit court, the writ of mandamus issued against the defendant county officials. Leave having first been obtained, they have appealed.

Incident to the construction of the Darlington subdivision drain in Washtenaw county, bonds aggregating $31,500 were issued March 1, 1927. Provision for issuing such bonds is contained in Act No. 316, Pub. Acts 1923, as amended by Act No. 365, Pub. Acts 1925. These statutory provisions are now embodied in the "Drain Code," 1 Comp. Laws 1929, § 4838 *et seq.* Plaintiff purchased 20 of these drain bonds, each in the amount of $1,000. Two of the bonds having matured April 1, 1932, were presented for payment, which was refused. Also plaintiff was refused payment of accrued interest due April 1, 1932. There was practically no money in the Darlington subdivision drain fund. This condition seems to have resulted largely, if not wholly, from delinquency in payment of assessments incident to

the construction of this drain. From taxes collected the county treasurer had on hand approximately $25,000, which, when properly entered on his books, constituted a part of the county's general fund. But the record sustains defendants' claim that, notwithstanding such money in the general fund, there would be a deficit in this fund resulting from the ordinary operating expenses of the county at the end of the current fiscal year. The board of supervisors did not authorize a transfer of any money from the general fund to the Darlington subdivision drain fund, and no appropriation was made to cover any deficiency in such drainage fund. Notwithstanding the facts above recited, plaintiff asserts its right to have payment made to it from the county's general fund.

Defendants have challenged the constitutionality of the act under which plaintiff asserts right of payment. In part unconstitutionality is asserted on the ground that the title to the drain code is not sufficient to cover the amendments embodied therein, which provide for issuing drainage bonds and contingent payment thereof from the county's general funds. Prior to the 1929 amendment the title read:

"An act to codify and add to the laws relating to the laying out of drainage districts, the construction and maintenance of drains, the assessment and collection of taxes therefor; to prescribe penalties for violations of certain provisions of this act; and to repeal certain acts relating to drains."

While, as pointed out by appellants, the title does not refer to the issuing of drain bonds, nonetheless we think that provision therefor in a drain law is clearly and necessarily germane to the general provisions of the act having to do with "the construc-

tion and maintenance of drains, the assessment and collection of taxes therefor.'' In 1917 the State Constitution was amended (article 8, § 15a), and express provision embodied therein for issuance of bonds for drainage purposes by drainage districts. In 1923 the legislature codified the drain law of this State and therein provided the manner and conditions for the issuing of drainage district bonds. Act No. 316, Pub. Acts 1923. The title adopted in 1923 remained unchanged and as above quoted until 1929. See Act No. 318, Pub. Acts 1929. Being a codification, the statute necessarily embodied various and somewhat diversified provisions of the drain law. But as against objections here raised, we do not find that the act violates article 5, § 21, of the Constitution, in that it embraces more than one object or because the title is deficient in that it is not sufficiently broad to cover the provisions of the act. Title to a codification statute can scarcely be expected to embody reference to every detail of the act. Such is not the constitutional requirement. If the title fairly apprises legislators and the public generally of the purposes of the act as a whole, such title is sufficient. *Vernor* v. *Secretary of State,* 179 Mich. 157 (Ann. Cas. 1915 D, 128). If the title is adequate, and the statute contains only that which is germane to its general purposes, it does not offend article 5, § 21, of the State Constitution which provides: ''No law shall embrace more than one object, which shall be expressed in its title.'' The title specifically refers to the ''construction'' of drains. Construction necessarily involves provision for payment of cost; and issuing bonds is a commonplace method (possibly too commonplace) for financing the cost of public improvements. Provision for issuing bonds is only incidental to the main general purpose of the

drainage act, and reference in the title to such provision is not necessary.

"The requirements of the Constitution, article 5, § 21, that no law shall embrace more than one object, which shall be expressed in its title, are met if an act centers to one main general object or purpose which the title comprehensively declares, though in general terms, and if the provisions in the body of the act not directly mentioned in the title are germane, auxiliary, or incidental to that general purpose." *Loomis* v. *Rogers* (syllabus), 197 Mich. 265.

See, also, *People* v. *Stimer,* 248 Mich. 272 (67 A. L. R. 552).

Substantially the same may be said of the portion of statute embodied in Act No. 331, Pub. Acts 1927 (above quoted [see 1 Comp. Laws 1929, § 4937]), wherein it is provided in case bonds mature or interest is payable and the drain fund is insufficient to meet the obligation "the same shall be advanced and paid by the county out of its general funds and reimbursement to said general fund shall be made out of the drain taxes thereafter collected." Clearly this provision has to do with the marketability of drain bonds. It has an important bearing upon the matter of obtaining funds with which to pay for construction, and is germane to the main purpose of the act. This provision of the drain code is not materially unlike another and earlier provision in the drain law (Comp. Laws Supp. 1922, § 4922 [Act No. 64, Pub. Acts 1921]), which reads:

"Provided, further, That the holder of such (drain) order may, if he so desires, have the right to require payment thereof out of any moneys in the general fund of the county treasury that may be available, if the drain fund is insufficient for such

purpose because of delinquency in the payment of drain taxes.''

As against the objection now under consideration, the title was held to cover the above-quoted amendment to the drain law. *Moore* v. *Harrison,* 224 Mich. 512. The title is sufficient as against the objections here urged. See *Vernor* v. *Secretary of State, supra.*

The amendment to the act wherein provision is made for payment from general county funds (Act No. 331, Pub. Acts 1927) became effective subsequent to plaintiff's purchase of the bonds involved in this case. Appellants urge that this amendment is not effective as to these bonds except it be construed as an *ex post facto* law and therefore unconstitutional. We think this contention is without merit and is fully answered in *Moore* v. *Harrison, supra.* Appellants' position is not tenable.

Defendants' answer denies the authority of the drain commissioner to issue the bonds; denies the duty or obligation to pay the bonds presented on the grounds of lack of money in the Darlington subdivision drain fund; asserts that the county has no right to levy a tax upon the county at large for the purpose of paying these drain bonds; and asserts that the condition of the general fund is such that the payment of the drain bonds would impair operation of necessary county governmental functions; and that, under the circumstances, there is no legal obligation upon the county as such to pay the bonds of the drainage district, the supervisors not having authorized a transfer of money from the general fund to the drainage district fund.

The statutory provision expressly authorizes and empowers the drain commissioner to issue drainage

bonds. Appellants' contention that since a county is not authorized to construct a drain "at the expense of the county," it follows that a drain commissioner acting for and in behalf of a drain district in issuing bonds cannot obligate the county for the payment of the bonds, cannot be sustained. The county does not pay or become obligated to pay these bonds except in the event that the drain fund is inadequate to meet the obligation of matured bonds or accrued interest; and in that event the statute provides only that the same shall be advanced and paid by the county out of its general fund and reimbursement to said general fund shall be made out of the drain taxes thereafter collected. Regardless of the temporary advancement by the county, in the end payment is by the drainage district. If the first assessments are inadequate, there is express statutory provision for an additional assessment upon the drainage district. 1 Comp. Laws 1929, § 4940. In passing upon the earlier provision of the drain law relative to drain orders being paid from the county's general fund, this court said, as might well be here said:

"There was no purpose to impose a tax on the county at large to aid in the construction of a particular drain. Under the proceedings taken, the lands specially assessed would be benefited to the amount of the assessment. There was no presumption that they would be abandoned by the owners by reason thereof. The intent as evidenced by the language of the act, considered in the light of its other provisions, was simply to require the county to advance out of its general fund sufficient sums to retire any orders then unpaid, reimbursing itself when the lands delinquent were either redeemed or sold. The

legislature had already imposed certain expenses on the county, presumably in its interest, and for which it would receive benefit. In imposing this additional burden, we do not think it exceeded its power." *Moore* v. *Harrison, supra,* 517.

On this phase of the case appellants, to some extent, rely upon the decision in *Spiegel* v. *Barrett,* 189 Mich. 111. Obviously the cited case is not at all applicable, because at that time there was no statutory provisions for paying the amount due on drain orders or drain bonds from the general county fund.

There still remains to be considered appellants' contention that because there was not sufficient money in the general county fund to cover the expenses of the county's governmental activities for the current year, refusal to pay these drain bonds from such general fund was justified. The opinion of the trial judge disposes of this phase of the case in the following language:

"Can the issuance of bonds by the drainage commissioner on behalf of the drainage district impair or jeopardize the necessary functions of government?

"In this connection our attention has been directed to the case of *Bay City Dredge Works* v. *Fox,* 245 Mich. 523. This latter case was mandamus to compel the county clerk and county treasurer to pay certain drain orders. Plaintiff there held certain drain orders and the drain fund being deficient demanded a payment out of moneys in the general fund in the county treasury, basing right thereto under Act No. 316, Pub. Acts 1923, as amended by Act No. 365, Pub. Acts 1925, and reading as follows:

" 'The holder of such order may, if he so desires, have the right to require payment thereof out of any moneys in the general fund of the county treasury that may be available.'

"The opinion was by a divided court, but the controlling opinion written by Mr. Justice Wiest held that the statute placed a limitation upon the right to have payment and contemplated that there might be moneys in the treasury not to be used for the payment of drainage orders, for it confines payment out of funds usable for such purposes.

"It was held that the term 'available' is employed in the statute in the sense of 'usable,' and that the statute did not grant plaintiff right to recourse to any and all moneys in the treasury, but limits resort to such only as are available for the payment of drain orders. Further, that the moneys in the treasury raised by taxation to meet ordinary current county expenses and needed for such purpose are set apart to such use and are not usable to pay drain orders.

"The *Bay City Dredge Case,* in my opinion, merely interpreted the statute there in question and with particular reference to the language therein contained. I am of the opinion that such reasoning was not intended to control the present situation. Here that portion of the statute under discussion is mandatory. It expresses the clear legislative intent that when the amount available in the drain fund shall be insufficient to pay the principal or interest of any drainage bonds heretofore or hereafter issued when they become due, the same shall be advanced and paid by the county out of its general funds.

"The statute does not include the word 'available,' which under Justice Wiest's opinion would be regarded as usable for the purpose. It simply states that bondholders shall be paid out of the general fund and that reimbursement shall be made. The wording does not indicate that the legislature intended that the probability or possibility of reimbursement should be determined prior to any pay-

ment for the purposes mentioned out of the general fund.    *   *   *

"It is my further opinion that, under the case of *Moore* v. *Harrison*, 224 Mich. 512, and the later case of *Township of Waterford* v. *Willson*, 257 Mich. 619, that the question of the depletion of the county funds does not enter into the discussion, in view of the statute, which is here upheld, and which provides for no exceptions or limitations upon the use of funds to all practical intents and purposes included in the general fund for the purpose stated."

Both on the date of instituting suit and on the date of hearing, there was in the Washtenaw county general fund money greatly in excess of the amount of the payment sought by plaintiff. Mandamus was the proper remedy, because plaintiff is clearly entitled to payment, and likewise the duty of respondents as public officers to make such payment out of moneys in the county's general fund is clearly and specifically imposed by statute. The record presents a clear legal duty on the part of the defendants and a clear legal right on the part of the plaintiff to have such duty performed. *Taylor* v. *Isabella Circuit Judge*, 209 Mich. 97; *Miller* v. *City of Detroit*, 250 Mich. 633.

The judgment is affirmed, with costs to appellee.

McDONALD, C. J., and POTTER, SHARPE, FEAD, WIEST, and BUTZEL, JJ., concurred. CLARK, J., took no part in this decision.