TOWNSHIP OF ROYAL OAK *v.* CITY OF PLEASANT RIDGE.

1. TOWNSHIPS—BONDS—STATUTES.
    The power of townships to issue bonds is limited to statutory provisions therefor and townships are likewise subject to no obligations, except such as are authorized by statutory provisions.

2. SAME—SEWERS AND WATER MAINS IN PLATTED LANDS—AUTHORITY TO ISSUE BONDS.
    Under Act No. 116, Pub. Acts 1923, as amended by Act No. 263, Pub. Acts 1925, and Act No. 58, Pub. Acts 1927, providing for the making of certain public improvements in platted lands and adjacent unplatted lands by township boards, to levy and collect special assessments therefor and issue bonds in anticipation of the collection of special assessments, neither the township nor any of its officers had any right to issue full faith and credit bonds of the township for sewer and water mains, the limit of authority then possessed being to pledge the faith and credit of the township for the prompt payment of special assessment bonds.

3. SAME—INCORPORATION OF CITY—ACCOUNTING FOR SPECIAL ASSESSMENT BONDS.
    City which had been incorporated from territory of a township not within a special assessment district for sewers and water mains and for which special assessment bonds were issued by township prior to severance of territory was not accountable to the township for any portion of bonds which had not been paid by the township (Act No. 116, Pub. Acts 1923, as amended by Act No. 263, Pub. Acts 1925).

4. SAME—INCORPORATION OF CITY INCLUDING SOME OF SPECIAL ASSESSMENT DISTRICT.
    A city, which was incorporated from territory of a township partially within a special assessment district for sewers and water mains for which special assessment bonds were issued prior to severance of territory, would be accountable to pay its portion of unpaid matured bond indebtedness from its general fund if there was no money in the special assessment fund (Act No. 116, Pub. Acts 1923, as amended by Act No. 263, Pub. Acts 1925; 1 Comp. Laws 1929, §§ 2337, 2339-2341, 2344).

5. SAME—SPECIAL ASSESSMENT BONDS—PAYMENT BY TOWNSHIP.

   A township within which is located a special assessment district
   for sewers and water mains for which special assessment
   bonds were issued prior to severance of other territory located
   entirely apart from the special assessment district in the
   township upon incorporation of a city remains solely liable
   on its obligation to advance money from its general fund
   when collections from special assessments fail to satisfy matur-
   ing outstanding obligations as the payment for such obliga-
   tions must ultimately come from the special assessment dis-
   trict (Act No. 116, Pub. Acts 1923, as amended by Act No.
   263, Pub. Acts 1925; 1 Comp. Laws 1929, §§ 2337, 2339-
   2341, 2344).

6. SAME—SPECIAL    ASSESSMENTS—STATUTES—ADVANCEMENT    OF
   MONEY FOR PROMPT PAYMENT.

   Under statutory provisions relative to issuance of special assess-
   ment bonds by a township for making an improvement for
   sewers and water main purposes in a special assessment dis-
   trict within the township, such bonds remain obligations of
   such district notwithstanding the township may have to ad-
   vance money for their prompt payment upon maturity from
   its general fund and subsequently obtain reimbursement from
   assessments when collected or from reassessments (Act No. 116,
   § 3, Pub. Acts. 1923, as amended by Act No. 58, Pub. Acts
   1927 [1 Comp. Laws 1929, § 2387]).

7. SAME—SPECIAL ASSESSMENT BONDS—GENERAL OBLIGATION BONDS.

   Where the title of a statute under which bonds were issued pro-
   vides that the power therein conferred upon township was one
   to issue special assessment bonds for making certain im-
   provements in platted lands and unplatted lands adjacent
   thereto and did not confer power to issue general or full faith
   and credit township bonds, the bonds issued remain special
   assessment bonds notwithstanding subsequently enacted statu-
   tory requirement that the township board advance sufficient
   funds from its general fund to pay bonds and interest when
   due if the special assessment fund was insufficient and for
   reimbursement from special assessments when collected or by
   reassessment of deficiency, as such subsequently enacted provi-
   sion could not and did not effect a transformation of the spe-
   cial assessment bonds into general obligation bonds but placed
   the township in the position of a guarantor of prompt pay-
   ment of the bonds (Act No. 116, Pub. Acts 1923, as amended
   by Act No. 263, Pub. Acts 1925, and Act No. 58, Pub. Acts
   1927).

8. SAME—INCORPORATION OF CITY—APPORTIONMENT OF TOWNSHIP
OBLIGATIONS.

Township which had not advanced money out of its general
funds for the redemption of special assessment bonds which it
had issued for construction of sewers and water mains in spe-
cial assessment district consisting of certain lands within the
township not within territory subsequently incorporated as a
city may not require city to advance any money out of its gen-
eral fund for prompt payment of such bonds where record does
not show inability on part of township to obtain from the
special assessments or reassessments funds to pay the bonds
in full (Act No. 116, Pub. Acts 1923, as amended by Act No.
263, Pub. Acts 1925, and Act No. 58, Pub. Acts 1927; 1 Comp.
Laws 1929, §§ 2337, 2339–2341, 2344).

BOYLES, J., dissenting.

Appeal from Oakland; Holland (H. Russel), J.
Submitted June 18, 1940. (Docket No. 109, Calen-
dar No. 40,743.) Decided November 13, 1940.

Bill by township of Royal Oak, a municipal cor-
poration, against city of Pleasant Ridge, a munici-
pal corporation, for an accounting and division of
assets and liabilities. Cross bill by defendant. De-
cree for plaintiff. Defendant appeals. Modified and
affirmed.

*Robert C. Baldwin,* for plaintiff.

*Arthur E. Moore,* for defendant.

NORTH, J. The township of Royal Oak filed a bill
of complaint against the city of Pleasant Ridge for
an accounting and for a decree directing that the de-
fendant city of Pleasant Ridge pay to plaintiff what-
ever sum might be found due. Defendant filed an
answer and cross bill asking for an accounting and
settlement and for a decree that plaintiff pay what-
ever sum might be found to be due defendant. From
the decree entered, defendant has appealed.

The dispute arises over bonds issued by the township of Royal Oak in October, 1926, as special assessment bonds. They were issued to pay for sewers and water mains under Act. No. 116, Pub. Acts 1923, as amended by Act No. 263, Pub. Acts 1925.* After these bonds were issued, the city of Pleasant Ridge was incorporated within the township of Royal Oak. No settlement has been made between the township of Royal Oak and the city of Pleasant Ridge.

The statute (1 Comp. Laws 1929, § 2337 [Stat. Ann. § 5.2224]) provides that all debts owing by a township from which territory has been detached shall be apportioned, and each city or township shall be charged with and pay its share of the debts according to the apportionment. This apportionment shall be equitable and fair (1 Comp. Laws 1929, § 2339 [Stat. Ann. § 5.2226]); and if there is outstanding indebtedness, it may be apportioned and each municipality shall be liable for the indebtedness apportioned to it. 1 Comp. Laws 1929, § 2340 (Stat. Ann. § 5.2227). Upon the payment of any of its indebtedness existing prior to said change of boundaries by any township, the municipality which acquired part of the township shall be liable to pay to the township paying any such indebtedness its pro rata share of the indebtedness so paid. 1 Comp. Laws 1929, § 2341 (Stat. Ann. § 5.2228).

The question comes to this, whether the city of Pleasant Ridge is liable upon the special assessment bonds above mentioned,—that is, whether the special assessment bonds are a general liability of the township of Royal Oak.

Act No. 263, Pub. Acts 1925, which amends Act No. 116, § 1, Pub. Acts 1923, provides:

---

* See 1 Comp. Laws 1929, § 2385 *et seq.* (Stat. Ann. § 5.2411 *et seq.*).—REPORTER.

"In any township where there are platted lands, the plats of which have been duly approved and recorded, lying outside of the boundaries of incorporated villages, the township board shall have authority to make improvements by * * * laying storm sewers to care for surface waters in such streets and making extensions of water mains to provide water for fire protection and domestic uses in any such platted lands, and in unplatted lands contiguous thereto; to levy and collect special assessments to pay the cost thereof and to issue bonds in anticipation of the collection of said special assessments, subject to the terms and conditions hereinafter provided."

The above act also amended the title of Act No. 116, Pub. Acts 1923. Prior to the amendment in 1925, the act contained no provision for laying storm sewers or for the establishment of water mains to provide water for fire protection and domestic uses. The title, as amended by Act No. 263, Pub. Acts 1925, was broadened sufficiently to cover the amended act which provided that the township board was authorized to lay storm sewers to care for surface water in such streets and to make extensions of water mains for the purposes above mentioned, and *"to provide for making, levying and collecting of special assessments to pay the cost thereof, and to issue special assessment bonds in anticipation of the collection of such special assessment taxes* to provide the money with which to pay the cost of such improvement."

Section 2 of Act No. 116, Pub. Acts 1923, of which Act No. 263, Pub. Acts 1925, was an amendment, provides:

"Upon the filing of petitions verified both as to signature and ownership, signed by sixty-five per centum of the owners of the platted land and by all the owners of unplatted land *to be made into a special*

*assessment district, in which any of the improvements specified in section one are desired by the owners of such land,* the township board shall have power to construct and maintain such improvements, to determine the cost thereof, and *to create, define and establish a special assessment district upon which the cost of such improvement shall be levied.*"

Section 3 of Act No. 116, Pub. Acts 1923, provides that the township board, before commencing any improvement, 1st, shall obtain from competent sources maps, plans and estimates of the proposed improvement; 2d, shall determine by resolution the cost of the proposed improvement; 3d, shall provide for the making of a special assessment upon each and every parcel of land in the special assessment district by benefits; 4th, and for the issuing and sale of *special assessment bonds* in anticipation of the collection of special assessment taxes; and, 5th, no such bonds shall be issued prior to the final confirmation of the assessment roll by the township board.

The power of townships to issue bonds is limited to statutory provisions therefor. "They (townships) have only such powers as the statute confers, and are subject to no obligations, except such as are derived from statutory provisions." *Commissioners of Highways* v. *Martin,* 4 Mich. 557, 560 (69 Am. Dec. 333). See, also, *Bogart* v. *Lamotte Township,* 79 Mich. 294; *Chemical Bank & Trust Co.* v. *County of Oakland,* 264 Mich. 673. Neither the township of Royal Oak nor any officer thereof had any right to issue full faith and credit bonds of the township for the improvements made in the special assessment district in this case. The limit of their authority at the time these bonds were issued was to pledge the faith and credit of the township of Royal Oak for the payment of these special assessment bonds out of the deferred assessment instalments when collected.

The controlling aspect of this case is that no portion of the special assessment district is within the city of Pleasant Ridge. Instead the special assessment district is distantly removed from the city.

If there had been no severance of any portion of the township's territory, under numerous and uniform holdings of this Court, and in consequence of the hereinafter quoted provision contained in Act No. 58, § 3, Pub. Acts 1927 * (1 Comp. Laws 1929, § 2387; *Whitman* v. *Township of Royal Oak,* 269 Mich. 146), the matured obligations arising from these special assessment bonds, in the absence of funds derived from paid special assessments, would have been payable out of the township's general funds. But the issue in the instant case is whether under the facts presented the defendant city at this time should be compelled to satisfy a portion of these special assessment obligations out of its general funds.

I think the city should not be held so obligated. As just above noted, the city took over no part of the special assessment district. If the city had taken over a portion of the special assessment district it would be obligated to advance money from its general funds to pay its portion of unpaid matured bond indebtedness, if there was no money in the special assessment fund. So to hold is in full accord with the acts of the legislature applicable to such situations. 1 Comp. Laws 1929, § 2344 (Stat. Ann. § 5.2231). But since in the instant case the city did not take over any portion of the assessment district it should not be required to advance from its general funds any portion of the past due and unpaid payments on the special assessment obligations. Instead this duty is upon the township. This conclu-

---

* Amended by Act No. 24, Pub. Acts 1934 (1st Ex. Sess.) (See Comp. Laws Supp. 1940, § 2387, Stat. Ann. § 5.2413).—Reporter.

sion is in harmony with our holding in *Moore* v. *Harrison,* 224 Mich. 512, in which the county was not relieved from advancing from its general funds by reason of the fact that certain lands within the county and in the special assessment district had been deeded by the auditor general to the State of Michigan as State homestead lands, and in consequence thereof the county could not reimburse itself by means of further collection of assessments against the land so deeded. In other words, the property which still remained in the county subject to assessment had to bear the burden of producing money in the general fund *to be advanced* in payment of the defaulted special assessment obligations. See, also, *Graves* v. *Bliss,* 235 Mich. 364, and *Highland Park* v. *Dearborn Township,* 285 Mich. 440.

To hold otherwise than above indicated would be to involve the city in a course of taxation for the purpose of raising money to meet obligations with which it has no concern. The full amount of this bonded indebtedness must eventually be paid by special assessments on lands wholly within the township limits. If the law is so administered, serious complications will be avoided but which otherwise would arise incident to any attempt on the part of the city to enforce collections or reassessments of the special assessments in township territory over which the city can have no governmental control.

The statutory authority for issuing these special assessment bonds is the amendment found in Act No. 263, Pub. Acts 1925. At the time these bonds were issued the legislature had not empowered a township to pledge its full faith and credit for payment of bonds of the type under consideration, nor has the township had such power at any time. When issued these bonds were definitely designated as special assessment bonds. They are still such. In the ordinary course their payment must ultimately

be by collection of special assessments in the designated assessment district. They are special assessment bonds notwithstanding that Act No. 58, Pub. Acts 1927, provides:

"If any such special assessment fund is insufficient to pay such bonds and interest thereon when due, the township board shall advance the amount necessary to pay such bonds, and shall be. reimbursed from such assessments when collected, or by reassessment of the deficiency if necessary."

The title to the above act confers only the power upon the township "to issue special assessment bonds." Since no power is given the township or its officers to issue general or full faith and credit township bonds, it must follow that the bonds issued under the previously cited statutory authority still remain special assessment bonds notwithstanding Act No. 58, Pub. Acts 1927.

Appellee relies upon *Whitman* v. *Township of Royal Oak, supra,* as authority for its contention that the bonds involved in the instant case and which were issued in 1926 became, by virtue of the provisions of Act No. 58, Pub. Acts 1927, "general obligation bonds of plaintiff's township." The case does not so hold.

In effect the above-quoted provision from Act No. 58, Pub. Acts 1927, did no more than place the township by force of law substantially in the position of a guarantor obligated to advance money for the prompt payment of the bonds, if at any time funds derived from collection of the special assessments were insufficient to pay amounts due and payable; but the act provides that for amounts so advanced out of its general funds the township is to be reimbursed from subsequent collections of special assessments. The above-quoted statutory provision could not and did not work a transformation

of these special assessment bonds into general obligation bonds.

The circuit judge found: "It is undisputed that the plaintiff township has advanced no money out of its general funds for the redemption of any of said bonds." Nor does it appear from this record that because of inability to obtain from the special assessments or reassessments funds sufficient to pay the bonds in full, the township may eventually have to pay a balance due on these bonds from its general funds. Should such a condition ultimately come about, there might then be room for the contention that the contingent statutory liability to advance money from the township's general funds had accrued and that payment, when made, was necessitated because it was then a general obligation of the township contracted before the severance of township territory by the defendant city. In that event the question would be presented as to whether the defendant city of Pleasant Ridge would not be liable for payment of its proportionate share of the general liability of the township which had accrued because of inability, if such should happen, to derive sufficient funds from the special assessments or reassessments to discharge in full the bond indebtedness. Suffice to say that on this appeal we do not have before us nor are we herein passing upon such a case; but a reservation might well be made in the decree to be entered in this case covering such a contingency.

We think the circuit judge was in error in holding the bonds in question were general obligations of the township whereby its "full faith and credit" were pledged. This appeal does not involve all of the issues adjudicated by the decree entered in the circuit court; but appellant's brief does not ask relief except as to the phase of the case hereinbefore considered. A decree may be taken in this Court modi-

fying the circuit court decree in the particular herein considered, but otherwise the decree heretofore entered in this case will stand. Costs of this Court to appellant.

BUSHNELL, C. J., and SHARPE, CHANDLER, MC-ALLISTER, and WIEST, JJ., concurred with NORTH, J. BUTZEL, J., concurred in the result.

BOYLES, J. (dissenting). The township of Royal Oak, plaintiff herein, seeks an accounting from the city of Pleasant Ridge under Act No. 38, Pub. Acts 1883 (1 Comp. Laws 1929, §§ 2334-2344 [Stat. Ann. §§ 5.2221-5.2231]), for moneys which plaintiff claims defendant is liable for as its proportion of assessments for Covert roads, county drains and State roads assessed at large, and also on account of moneys claimed by plaintiff from the defendant as its proportionate share of bonds issued by the township for water and sewer improvements.

Several cities have been incorporated out of the original area of the plaintiff township, the first being the city of Royal Oak in 1921, 1927, next the city of Ferndale in 1927, and then the defendant herein, the city of Pleasant Ridge, on March 31, 1928. Subsequently, the cities of Berkley and Huntington Woods have been incorporated out of remaining territory of Royal Oak township.

Act No. 38, Pub. Acts 1883, provides for the adjustment of rights and liabilities on the division of territory between cities and townships. Section 4 (1 Comp. Laws 1929, § 2337 [Stat. Ann. § 5.2224]), provides that all debts owing by a township from which territory has been detached shall be apportioned in the same manner as personal property of such city or township, and each city and township shall be charged with its share of the debts according to such apportionment. Sections 5 and 6 (1 Comp. Laws 1929, §§ 2338, 2339 [Stat. Ann. §§ 5.2225,

5.2226]), provide for a meeting between the city and township as soon as practicable after the change of boundary, for settlement of their differences, at which meeting the designated representatives of each shall make a fair and equitable division of the personal property, and also apportion the indebtedness of the city and township between them. Section 7 (1 Comp. Laws 1929, § 2340 [Stat. Ann. § 5.2227]), provides that if these representatives fail to arrive at a settlement, either party may file a bill in chancery for an accounting, and for an apportionment of their debts; and the court may by decree apportion the amount of the indebtedness of the township for which the city shall be liable.

For some two years after the city of Pleasant Ridge was incorporated out of the area of Royal Oak township, March 31, 1928, no effort was made by these parties to apportion the assets and determine the relative liabilities. In 1930, and again in 1937, certain audits were made attempting to settle the rights of plaintiff and defendant in regard to apportionment of this indebtedness. These audits have been accepted (with certain reservations) as the basis for the decree of the court below.

The record indicates that there are two separate matters involved in the accounting. As to the first, the court below reached the conclusion that as of March 31, 1937, the defendant was indebted to the plaintiff in the net sum of $7,891.80 on account of defendant's liability for its share of county road and drain taxes, with interest to that date, after deducting certain credits due defendant from plaintiff on account of delinquent taxes. Appellant does not assign error on this finding and the decree of the court below is affirmed to that extent. Four per cent. interest on $2,648.51 from March 31, 1937, will be added to the above sum, that being the rate agreed upon on the record by the parties.

The second and remaining question to be disposed of relates to whether the defendant is liable to plaintiff for the payment of a proportionate share of certain bond obligations incurred by plaintiff township for water and sewer improvements prior to 1928.

In October, 1926, the plaintiff township issued certain special assessment bonds so-called, referred to as bonds of special assessment rolls Nos. 5 to 11, inclusive, for the purpose of paying for certain sewer and water improvements made in platted lands within the township. These bonds were issued under the authority of Act No. 116, Pub. Acts 1923, as amended by Act No. 263, Pub. Acts 1925 (1 Comp. Laws 1929, §§ 2385-2388 [Stat. Ann. §§ 5.2411-5.2414]). Each bond so issued provided among other things as follows:

"For the prompt payment of this bond, both principal and interest, the collections from special assessment roll No. 11, together with the full faith and credit of the township of Royal Oak, are hereby irrevocably pledged.     *     *     *

"This bond is payable out of special sewer assessment roll No. 11 funds."

A similar provision occurs in each bond except that the assessment roll number varies.

Plaintiff claims an accounting from defendant on the ground that these bonds were and are general obligation bonds of the plaintiff township and, therefore, constitute an indebtedness of the township at the time the defendant city was carved out of Royal Oak township. Plaintiff claims, therefore, that defendant is liable for a proportionate share of this indebtedness under section 4 of Act No. 38, Pub. Acts 1883.

The record discloses that no part of the special assessment district against which the taxes for these improvements were levied by the township was taken

over by the defendant city. On the contrary, the improvement district is in a portion of the township at a distance from the present territorial boundaries of the defendant city of Pleasant Ridge.

These bonds were issued under the provisions of Act No. 116, Pub. Acts 1923, as amended by Act No. 263, Pub. Acts 1925. This act authorizes any township to make improvements on platted lands lying outside the boundaries of incorporated villages; to levy and collect special assessments to pay the cost thereof and to issue bonds in anticipation of the collection of such special assessments. The township board is authorized to create and establish a special assessment district "upon which the cost of such improvement shall be levied." As to these provisions of the act, no subsequent change has been made. However, subsequent to the time of the issue of these bonds in 1926, section 3 of this act was amended by Act No. 58, Pub. Acts 1927, and the following provision added:

"If any such special assessment fund is insufficient to pay such bonds and interest thereon when due, the township board shall advance the amount necessary to pay such bonds, and shall be reimbursed from such assessments when collected, or by reassessment of the deficiency if necessary."

In 1934, Act No. 24, Pub. Acts 1934 (1st Ex. Sess.), further amended section 3 of the above act by providing that the township board *may* (instead of *shall*) advance the amount of the bonds from its general funds.

In 1931, the plaintiff township defaulted in the payment of these bonds. This resulted in litigation which was decided by this court in *Whitman* v. *Township of Royal Oak* (October, 1934), 269 Mich. 146. This was a bill filed by bondholders against the township and others to compel payments due on the

identical bonds now before the court in the instant case. In that case, the defendant township of Royal Oak claimed that the township originally had no power to issue these bonds on its general credit, and that the act of 1927 could not be made retroactive. Justice Edward M. Sharpe, the court unanimously concurring, held:

"Under Act No. 58, Pub. Acts 1927, the township was required to advance the amount of money necessary to pay the bonds, and to reimburse itself from special assessments when collected, or by reassessment of the deficiency if necessary. Under the holdings of *Moore* v. *Harrison,* 224 Mich. 512, and *Regents of University of Michigan* v. *Pray,* 264 Mich. 693, this act is constitutional. Nor is the township relieved from this obligation by the effect of Act No. 24, Pub. Acts 1934 (1st Ex. Sess.). The act in terms applies only to bonds issued subsequent to April 21, 1927, whereas the bonds here in question were issued in 1926. Moreover, prior to the time Act No. 24 took effect the rights of the bondholders had become fixed and, on presentation of matured bonds, bondholders were entitled to payment out of the township's general fund. That this general liability of the township to pay was not released by Act No. 24, Pub. Acts 1934 (Ex. Sess.), see, also, Act No. 25, Pub. Acts 1931, § 4-a."

In the case at bar, plaintiff cites the above as controlling, and claims that the bonds in question were the general obligation of the township, therefore, an indebtedness at the time of their issue for which the defendant city is proportionately liable.

This statute was again before the court in *City of Highland Park* v. *Dearborn Township* (1938), 285 Mich. 440, where certain bondholders joined with the city of Highland Park in bringing suit in equity to recover on matured bonds issued by Dearborn township, also seeking to compel a general tax levy for

their payment. The bonds in question were issued subsequent to the effective date of Act No. 58, Pub. Acts 1927, which at that time provided that if any special assessment fund should be insufficient to pay such bonds, the township board *shall* advance the money and be reimbursed from the special assessments when collected, or by reassessment (later changed to *may*). The bonds were issued under the authority of this same act, Act No. 116, Pub. Acts 1923, as amended by Act No. 263, Pub. Acts 1925, and Act No. 58, Pub. Acts 1927. Plaintiffs contended they were entitled to have the township levy a general tax in order that the bonds be paid. The defendant township urged the unconstitutionality of Act No. 58, Pub. Acts 1927, in providing that if the special assessment fund be insufficient the township board shall advance the necessary money and be reimbursed from assessments when collected, or by reassessment. Defendant township also claimed that Act No. 58, Pub. Acts 1927, does not authorize a general tax levy. The court held:

"Appellant's (defendant's) contention that the provision above quoted from section 3 of the statute is unconstitutional cannot be sustained. We have already passed upon this question.

" 'Under Act No. 58, Pub. Acts 1927, the township was required to advance the amount of money necessary to pay the bonds, and to reimburse itself from special assessments when collected, or by reassessment of the deficiency if necessary. Under the holdings of *Moore* v. *Harrison*, 224 Mich. 512, and *Regents of University of Michigan* v. *Pray*, 264 Mich. 693, this act is constitutional.' *Whitman* v. *Township of Royal Oak*, 269 Mich. 146."

This leads us to the question, whether the 1927 act is to be considered retroactive as to the bonds before us in the instant case which were issued in 1926. While that question was not squarely before the court in the *Highland Park Case, supra*, this court did, however, refer to it.

"Appellant is not in position to raise the question as to the act being unconstitutional in event an attempt were made to apply it to special assessment bonds issued prior to the 1927 amendment, which is above quoted as part of section 3. All of the bonds involved in the instant case were issued after this amendment became effective. As to these subsequently issued bonds the act must be held valid. In the instant case we are not concerned with the validity or invalidity of the act as applied to bonds issued prior to the above-noted amendment. As to such prior-issued bonds appellant contends the act would be unconstitutional on the ground of its being retroactive. Certainly statutory construction should not be more strict in civil than in criminal cases. In the administration of the law in a criminal case the supreme court of the United States has said:

"'The rule upon this subject, which we consider applicable, is that "a legislative act may be entirely valid as to some classes of cases and clearly void as to others. A general law for the punishment of offenses, which should endeavor to reach by its retroactive operation acts before committed, as well as to prescribe a rule of conduct for the citizen in future, would be void so far as it was retrospective; but such invalidity would not affect the operation of the law in regard to the cases which were within the legislative control." Cooley, Constitutional Limitations (5th Ed.), p. 215.' *Jaehne* v. *New York,* 128 U. S. 189 (9 Sup. Ct. 70).

"It should be noted, however, that notwithstanding the foregoing would be sufficient answer to appellant's contention, nothing hereinbefore said should be construed as indicating a departure by this court from its former holdings that a legislative enactment of the character hereinbefore quoted from section 3 is not unconstitutional notwithstanding it may be given retroactive effect. See *Moore* v. *Harrison, supra; Regents of University of Michigan* v. *Pray, supra;* and *Whitman* v. *Township of Royal Oak, supra.*" *City of Highland Park* v. *Dearborn Township, supra.*

There are three possible theories as to the effect of Act No. 58, Pub. Acts 1927, upon the bonds issued in 1926:

(1)   The 1927 statute is an *advancement* statute only and, therefore, need not make the 1926 bonds general obligation bonds. Under this statute, the money is not finally paid by the township out of generals funds but out of moneys collected from the special assessment district. Strictly following this theory, the plaintiff may not recover in the instant case because the money is merely advanced by the township, to be reimbursed from the special assessments and not by a tax lien at large and, therefore, is not the true obligation of the township;

(2)   The statute makes the bonds the general obligations of the township and applies retroactively to bonds issued before the statute was enacted. Under this theory, plaintiff may recover from the defendant unless the statute is unconstitutional by reason of imposing upon defendant a liability it did not seek to assume;

(3)   The statute makes the bonds the general obligations of the township, and as applied to the bonds in this case, is not unconstitutional since the statute makes of the bonds in question exactly what the township tried to make of them, namely, a general liability. Under this theory, plaintiff may recover.

There seems to be authority in Michigan decisions for any of these three theories.

Theory (1) is supported by *Moore* v. *Harrison* (1923), 224 Mich. 512, and by *Regents of University of Michigan* v. *Pray* (1933), 264 Mich. 693; also, possibly, by *Whitman* v. *Township of Royal Oak* (1934), *supra.*

Theory (2) is supported by *Graves* v. *Bliss* (1926), 235 Mich. 364; *Beach* v. *Myll* (1933), 264 Mich. 604;

and, also, *City of Highland Park* v. *Dearborn Township* (1938), *supra.*

While these two theories are apparently inconsistent, these cases have been cited without discrimination in *Cowen* v. *Macomb County* (1939), 290 Mich. 361; *Royal Oak Drain District* v. *Keefe* (C. C. A., 1937), 87 Fed. (2d) 786.

Theory (3) is supported by *Chemical Bank & Trust Co.* v. *County of Oakland* (1933), 264 Mich. 673, and by textbook authorities.

As to theory (1), in *Moore* v. *Harrison, supra,* a drain law, substantially the same as the sewer and water improvement law (Act No. 116, Pub. Acts 1923, as amended), was applied retroactively. In that case, Midland county constructed a drain within the special assessment district in 1914. Plaintiff, the owner of drain orders, brought mandamus against the county treasurer to compel payment. Plaintiff claimed he could recover under Act No. 142, Pub. Acts 1919, as amended by Act No. 64, Pub. Acts 1921 (Comp. Laws Supp. 1922, § 4922), being an amendment to 1 Comp. Laws 1915, § 4922 (the drain law). The provision relied upon by plaintiff was as follows:

"*Provided further,* That the holder of such order may, if he so desires, have the right to require payment thereof out of any moneys in the general fund of the county treasury that may be available. * * * In any such case where payment is made by the county treasurer out of the general fund any and all delinquent drain taxes * * * shall be credited to the general fund until the same is reimbursed."

The county claimed this act sought to pledge the general credit of the county for bonds issued before the act was passed and that the act was unconstitutional if applied retroactively. The court held the

act was constitutional—that there was no purpose to impose a tax on the county at large, saying (pp. 517-519):

"The intent as evidenced by the language of the act, considered in the light of its other provisions, was simply to require the county to advance out of its general fund sufficient sums to retire any orders then unpaid, reimbursing itself when the lands delinquent were either redeemed or sold. * * *

"We find no purpose or intent in any of these statutes to impose a tax on the township, county or State other than that which it should justly bear. The greater need of securing early payment to those for whose benefit a particular tax was spread was the appealing factor. There has been much legislation in this State of the same character."

In *Regents of University of Michigan* v. *Pray, supra,* the regents sought mandamus against Washtenaw county to compel payment of certain drainage district bonds. The defendants showed that there were no funds in the drainage district but the plaintiffs claimed payment from the general fund under 1 Comp. Laws 1929, § 4937 (Stat. Ann. § 11.101), which superseded but was similar to the statute referred to in *Moore* v. *Harrison, supra.* The amendment to the act, under which payment from the general fund was claimed, became effective subsequent to the plaintiffs' purchase of the bonds. The court said:

"Appellants urge that this amendment is not effective as to these bonds except it be construed as an *ex post facto* law and therefore unconstitutional. We think this contention is without merit and is fully answered in *Moore* v. *Harrison, supra.* Appellants' position is not tenable."

This case held that the county did not become obligated to pay the bonds except in the event the drain

fund was inadequate; that in such event, the statute required only that the same be advanced by the county out of its general fund and reimbursement made to the general fund out of drain taxes thereafter collected.

The case of *Whitman* v. *Township of Royal Oak, supra,* is claimed by both plaintiff and defendant in support of their respective contentions. The record and briefs in this case show that the question was squarely before the court as to whether the bonds in question were the general obligation of the township. The bonds involved therein were the same bonds as in the case at bar. The language of the opinion in this case is not entirely inconsistent with theory (1). However, the *lower* court held that the township was not liable generally, and, in reversing the decree of the lower court, this case seems to be authority for holding these bonds to be the general obligation of the township, notwithstanding the language above quoted in this opinion. In this case, *Moore* v. *Harrison, supra,* and *Regents of University of Michigan* v. *Pray, supra,* are cited as authority for the holding. Plaintiff's answer to defendant's cross bill admits that the defendant *took no part in the Whitman Case and is not bound thereby.*

Theory (2): Act No. 58, Pub. Acts 1927, converts the bonds at bar into general obligation bonds if this statute is constitutional under that construction. In *Graves* v. *Bliss, supra,* the facts were the same as in *Moore* v. *Harrison, supra,* except that it was stipulated that it was impossible for the county to reimburse itself from the special assessment district collections since certain of the lands in the district had been deeded by the auditor general to the State as State homestead lands. The drain fund had long been exhausted and plaintiffs sought by mandamus to compel payment out of the general fund. The court, citing *Moore* v. *Harrison, supra,* with ap-

proval, held that the statute did not make payment of drain orders from the general fund dependent upon the power to reimburse; that payments from the general fund were not contingent upon reimbursement. Obviously, the effect of this holding would be to make the drain orders, or drain bonds, the general obligation of the county because, if the general fund was never reimbursed from the special assessment, the money must ultimately come from general taxation and, therefore, become a general obligation of the county.

*Beach* v. *Myll, supra,* follows and cites with approval both *Moore* v. *Harrison, supra,* and *Graves* v. *Bliss, supra.* In this case, the money had been raised and credited to the drain fund and subsequently used for other purposes. The court held payment must be made out of the general fund.

*City of Highland Park* v. *Dearborn Township, supra,* decided in 1938, after the effective date of Act No. 58, Pub. Acts 1927, seems to support by inference the second theory, that the bonds in question are general obligations. While the *Whitman Case* might possibly be considered as based upon the advancement theory only, the *Highland Park Case* obviously extends this holding to the pledging of the township's general credit. As before stated herein, the question whether Act No. 58, Pub. Acts 1927, applies to bonds issued before the act was passed was left unanswered in this case.

Theory (3): Regardless of whether the statute makes these bonds general obligations of the township, or merely requires advancement of the money, the theory that this statute is remedial and makes the bonds squarely what the township intended to make of them, finds support in the decision of this court in *Chemical Bank & Trust Co.* v. *County of Oakland, supra.* In this case, the bank sought mandamus to compel Oakland county to spread a tax sufficient to

pay certain bonds held by plaintiff. Defendant denied liability, claiming the bonds were issued without authority of law and wholly void. The bonds were a refunding issue of tax anticipation notes issued February 2, 1931. Subsequent to the issue, Act No. 26, Pub. Acts 1931 (Comp. Laws Supp. 1940, § 2702-1 *et seq.*, Stat. Ann. § 7.821 *et seq.*), became effective purporting to validate previous acts of a municipality otherwise invalid. The court dismissed the claim of the county in the following language:

"It is claimed the board of supervisors of Oakland county did not have power and authority to borrow the $1,000,000 upon the issuance of *its* tax anticipation notes on February 2, 1931. We need not discuss this contention, for the reason that Act No. 26, § 3, Pub. Acts 1931, provides:

" 'Notes heretofore issued in anticipation of the collection of delinquent taxes or special assessments are hereby declared to be legal and valid obligations of the county, township, city, village, or school district issuing the same as if issued or sold hereunder.'

"The legislature may, by subsequent act, validate and confirm previous acts of a municipal corporation otherwise invalid. If the act could have been lawfully performed or done under precedent legislative authority, the legislature may subsequently ratify it and give it effect. 1 Dillon, Municipal Corporations (5th Ed.), § 129.

" 'In the absence of special constitutional restrictions, the competency of the legislature to enact retrospective statutes to validate an irregular or defective execution of a power by a municipal or public corporation, is undoubted. * * * Subsequent legislative sanction within constitutional limits is equivalent to original authority.' 2 Dillon, Municipal Corporations (5th Ed.), § 948."

In *Moore* v. *Harrison, supra,* referring to drain orders issued after the enactment of a drain statute similar to Act No. 58, Pub. Acts 1927, this Court said:

"It is contended that the provisions of the amendment do not apply to orders issued before its enactment. In terms it provides that the holder of an order, after a time definitely fixed, shall have the right to require its payment by the county treasurer. It contains no language, such as 'hereafter' or 'after this act shall take effect,' indicating an intent that it should not apply to orders already issued. The reasoning in *Township of Clearwater* v. *Board of Sup'rs of Kalkaska Co.*, 187 Mich. 516, 521, is instructive:

" 'The rights and duties of these municipalities are not based on any contractual relations. They are organizations purely for public purposes, and their powers, rights, and duties may at any time be modified or abolished by legislation. A law is not retrospective, in a sense forbidding it, because a part of the requisites for its action and application is drawn from a time antedating its passage. It was within the power of the legislature to provide, in consideration of previous expenditures for State reward roads and county road taxes paid out of proportion to benefits, that the township should under certain contingencies have, through a process of rebate, relief in part from the burden of such taxation for a time thereafter.'

"In 36 Cyc. p. 1209, it is said:

" 'In accordance with the general rule that remedial statutes should be given a liberal construction, they will be freely construed to have a retrospective operation whenever such seems to have been the intention of the legislature, unless such a construction would impair the validity of contracts, disturb vested rights, or create new obligations.'

"The amendment is remedial in its nature, and we think its provisions applicable to orders issued before its enactment."

Obviously, Act No. 58, Pub. Acts 1927, merely accomplishes what the township of Royal Oak attempted to do, and that was to make these bonds in effect general obligation bonds of the township. It seems idle ceremony to hold that a municipality may legally issue obligations which must be paid out of

its general tax moneys in the event of a definite and final failure of special funds primarily used for payment, and still reach the conclusion that they are not general obligations.   In the event of conclusive and final insolvency of the special fund, the money must in the last analysis come from the taxpayers.   In the case at bar, the question was settled as between bondholders and the township by *Whitman* v. *Township of Royal Oak, supra.*   It would not be equity to hold that the general funds of plaintiff township might be liable for the ultimate payment of these bonds under Act No. 58, Pub. Acts 1927, and then to hold, in construing the same statute, that these bonds were not general obligations of the township for the purpose of an accounting against the defendant in the instant case.   The inhabitants and property owners of the present city of Pleasant Ridge who were a part of the township when these bonds were issued in 1926 had the same opportunity as the others in the township to object to the action of their township board when it issued these "full faith and credit" bonds.   Equity should not relieve them of the resultant liability for their share of the burden.

For the purposes of this case, we hold that plaintiff is entitled to an accounting from the defendant for payment of defendant's proportionate share of the bonds.

The court below correctly concluded that the defendant should not be required to make payment to the plaintiff on account of these bonds until plaintiff had actually made payment out of its general fund and had not been reimbursed from the special assessments.   The record shows that at least in 1937 the plaintiff had not yet paid out money from its general fund on that account; on the contrary, at that time there was a balance of approximately $5,000 in the special assessment district fund.   The court further correctly held that as the township re-

covers funds from the special assessment district, or from reassessments, it is obligated to credit the defendant city with its proper percentage of the same. Section 8 of the act under which this action is brought (1 Comp. Laws 1929, § 2341 [Stat. Ann. § 5.2228]), merely provides that upon payment of its indebtedness existing prior to the change of boundary by the township, the city shall be liable to and pay the township its pro rata share of the indebtedness so paid. Obviously, the city cannot be required to make payment until after the township itself has paid bondholders out of its general fund and has not been reimbursed.

Defendant also claims the trial court erred in computing the amount of the special assessment bonds upon which the defendant city of Pleasant Ridge would be liable without deducting therefrom the portions which should have been assumed by the cities of Royal Oak and Ferndale through prior annexations.

The statute, 1 Comp. Laws 1929, § 2337 (Stat. Ann. § 5.2224), contemplates that the township debt to be shared by the city of Pleasant Ridge shall be the township debt existing at the time of incorporation—at the time when the territory is detached from the township. This date was March 31, 1928.

The assessed valuation of Royal Oak township at the time Pleasant Ridge was incorporated was $38,945,060. This excluded that portion of the township already incorporated in the cities of Royal Oak and Ferndale. The assessed valuation of that portion now included in the city of Pleasant Ridge as of March 31, 1928, was $3,982,465. Therefore, the percentage of the assessed valuation of Royal Oak township, after excluding previously incorporated areas taken out of the township before March 31, 1928, included in the city of Pleasant Ridge would be 10.22585. The trial court uses this percentage in

determining the amount of indebtedness of the township which should be assumed by the city of Pleasant Ridge as of March 31, 1928. At the time the bonds were issued, the township alone was liable for the entire $205,204.18. However, on March 31, 1928, 9.7237 per cent. of the assessed valuation of the township had been annexed by the city of Royal Oak, and 26.1937 per cent. had been annexed by the city of Ferndale, making a total assessed valuation of the township withdrawn by these two cities before March 31, 1928, 35.9174 per cent. Therefore, under our holding in this case, 35.9174 per cent. of the indebtedness of the township on March 31, 1928, should have been chargeable against the cities of Royal Oak and Ferndale. This leaves the remaining balance of the township indebtedness on March 31, 1928, namely, 64.0826 per cent. thereof, to be apportioned between the township and the city of Pleasant Ridge. In other words, the amount to be thus apportioned is $131,500.17. The city of Pleasant Ridge should be required to account for 10.22585 per cent. of this amount; therefore, the amount of money which may be apportioned against the defendant on account of the indebtedness of the township of Royal Oak (excluding that portion chargeable to the cities of Royal Oak and Ferndale) is $13,447.01. The decree of the court below should be modified and, instead of requiring the defendant to account for $20,983.87, decree should be entered for $13,447.01. The defendant should not be penalized by any erroneous settlements made between Royal Oak township and the cities of Royal Oak and Ferndale with respect to property or indebtedness which should be apportioned to them as of March 31, 1928.

Case should be remanded for entry of decree in accordance with this opinion. The questions involved herein being of public interest and concern, no costs are allowed.