DETROIT BOARD OF EDUCATION *v.* SUPERINTENDENT OF
PUBLIC INSTRUCTION.

BAY CITY SCHOOL DISTRICT *v.* SAME.

1. SCHOOLS AND SCHOOL DISTRICTS—ALLOCATION OF SCHOOL AID.
     The fact that various items in distribution of school aid fund
     would be doubled or trebled by formula for distribution pre-
     scribed by school aid fund act would not be a reason for not
     allocating the funds pursuant to the formula therein contained
     (Act No. 368, Pub. Acts 1941).

2. STATUTES—CONSTRUCTION.
     A statute must be construed so as to accomplish the intent and
     purpose of the legislature without violating the plain wording
     of the act.

3. SCHOOLS AND SCHOOL DISTRICTS—ALLOCATION OF SCHOOL AID—
   HIGH SCHOOL TUITION.
     Where allocation from school aid fund to a school district pur-
     suant to general provisions of statutory formula was less than
     85 per cent. of actual amount received by such district during
     school year 1940–1941 on the basis of $41,000,000 school aid
     including primary school interest fund, primary supplement
     fund, equalization fund and tuition as distributed under pro-
     visions of act then in effect, increase of allocation to such
     school district to 85 per cent. of such actual amount received
     for mentioned school year ''in addition to the amounts allo-
     cated and paid for high school tuition'' for the year 1941–1942
     under specified section of the school aid act was authorized
     by such school aid act as against contention that such high
     school tuition should not be added (Act No. 368, §§ 3, 6 [a],
     18, 19, Pub. Acts.1941).

4. SAME—OMISSION OF EQUALIZED ASSESSED VALUATION.
     Omission by superintendent of public instruction of equalized
     assessed valuation of property in school districts whose allo-
     cation from school aid fund pursuant to general provisions of

statutory formula was insufficient to meet minimum requirements of such formula in determining the deductible millage necessitated because appropriation to school aid fund was insufficient to put the school aid act fully into effect was proper notwithstanding the deductible millage to apportion the deficit was thereby increased in remaining districts (Act No. 368, §§ 3, 6[a], 18, 19, Pub. Acts 1941).

5. STATUTES—AMBIGUITIES—ADMINISTRATIVE CONSTRUCTION.

Construction of a statute by administrative officials or agencies, where such construction is within the terms of an act whose terms are obscure or ambiguous, is entitled to consideration by, but is not binding upon, courts.

6. MANDAMUS—PERFORMANCE OF A CLEAR LEGAL DUTY.

Mandamus is denied one who fails to satisfy the court that the opposite party has refused to perform a clear legal duty with the performance of which he is charged.

7. SAME—SUPERINTENDENT OF PUBLIC INSTRUCTION—APPORTIONMENT OF SCHOOL AID.

Mandamus to compel superintendent of public instruction to apportion school aid fund in specific manner claimed by plaintiffs and to have distribution by other State officers in accordance therewith is denied where it does not appear that method of apportionment adopted by superintendent was in violation of statute (Act No. 368, Pub. Acts 1941).

8. COSTS—MANDAMUS—PUBLIC QUESTION—APPORTIONMENT OF SCHOOL AID.

No costs are allowed in mandamus proceeding by school districts to compel a superintendent of public instruction to apportion school aid fund in a particular manner, a public question being involved (Act No. 368, Pub. Acts 1941).

Separate petitions for mandamus by Board of Education of the City of Detroit and by School District of Bay City and other school districts to compel State Superintendent of Public Instruction, State Auditor General, and State Treasurer to allocate and distribute State school aid funds. Cases consolidated. Submitted December 22, 1942. (Calendar Nos. 42,164, 42,220.) Writ denied January 4, 1943.

*Paul E. Krause, Clarence E. Page,* and *Walter E. Vashak,* for plaintiff Board of Education of City of Detroit.

*Linsey, Shivel, Phelps & Vander Wal (Gilbert W. Hand,* of counsel), for plaintiff School District of Bay City and other plaintiffs.

*Herbert J. Rushton,* Attorney General, *Edmund E. Shepherd,* Solicitor General, and *Daniel J. O'Hara,* Assistant Attorney General, for defendants.

*Burke & Burke, John J. Fish, W. Hugh Williams,* and *Michael J. Mozola, amici curiae.*

NORTH, J. By Act No. 368, Pub. Acts 1941 (Comp. Laws Supp. 1942, § 8140–1 *et seq.,* Stat. Ann. 1942 Cum. Supp. § 15.1916 [1] *et seq.*), the legislature provided for an annual appropriation of $44,500,000, less the primary school interest fund, to be paid from the general State fund for aid in supporting public schools and to reimburse counties to the extent provided in the act for salaries paid to school commissioners. The fund so created is designated the school aid fund. By lengthy, detailed, complicated, and to some extent conflicting provisions, the act governs the manner in which the superintendent of public instruction annually apportions this fund among school districts of the State.

In these two cases, plaintiff school districts assert that the apportionment or allotment of the school aid fund, as made for 1941–1942 and as the superintendent of public instruction proposes to apportion it for the year 1942–1943, does not conform to statutory provisions; and that plaintiffs thereby have been and will be deprived in a substantial amount of their just participation in the school aid fund.

By mandamus plaintiffs seek to have the superintendent of public instruction, who under section 19 of the act apportions the school aid fund, compelled to make an apportionment of the fund in the manner which they assert the statute requires, and to have the distribution of this fund by the other State officers, defendants herein, made accordingly.

Decision necessitates consideration of two alleged deviations from the statutory provisions as to apportionment of the school aid fund. As to the first of these contentions, plaintiffs' position as stated in one of their briefs is as follows—the controversial portion being italicized:

"Where a school district, under the provisions of Act No. 368, Pub. Acts 1941, would be allocated a sum less than 85 per cent. of the actual amount received by the said school district for the year 1940–1941 on the basis of $41,000,000 school aid, including primary school interest fund, primary supplement fund, equalization fund and tuition, *is the superintendent of public instruction authorized to increase such sum to the aforesaid 85 per cent. and add thereto a sum equal to the amount of tuition allocated to said district for tuition for the year 1941–1942?*"

Plaintiffs contend the allocated tuition should not be added.

Omitting many limitations and regulations pertaining to participation in the school aid fund which are not here in controversy, the portion of the act which is primarily pertinent to the above issue and which is said to contain the formula for distribution is section 3. For reference we italicize certain portions of this section and quote:

"SEC. 3. To every school district in the State, except as is otherwise provided in this act, *in addi-*

*tion to the amounts allocated and paid for high school tuition under section 6 (a) of this act,* there shall be apportioned annually out of the school aid fund, where the same is required to meet the provisions of this act, a sum which when taken with the amount of the apportionment from the primary school interest fund, plus elementary tuition receipts as defined in section 9 of this act, plus a sum equal to a two and three-quarters mill tax (or such millage in excess of this amount as is necessary, said millage to be determined by the superintendent of public instruction in accordance with section 18 of this act) on the valuation of the property in the district, will equal a sum obtained by computing the number of elementary pupils at $55 each and the number of high school pupils minus high school tuition pupils, at $75 each, in average membership, except in school districts having a membership of 3,000 or more, exclusive of high school tuition pupils, will equal a sum obtained by computing the number of elementary pupils at $57 each and the number of high school pupils minus high school tuition pupils at $77 each in average membership, plus the amounts allocated for outlying schools in township school districts under section 27 of this act, and plus the amounts allocated for transportation under section 6 (b) of this act: *Provided, however,* That the apportionment of said school aid fund to the several school districts shall be governed and limited by the provisions of sections 4, 5 and 18 of this act: *Provided further, That no school district having a school census of 800 or more shall be allotted annually during the biennium ending June 30, 1943 less than 85 per cent. of the actual amount received by said district during the school year 1940–1941 on the basis of $41,000,000 school aid including primary school interest fund, primary supplement fund, equalization fund, and tuition as distributed under the provisions of Act No. 236 of the Public Acts of 1933 as amended.*"

In connection with the quoted section, it may be noted that section 6 (a) of the act, so far as material, provides:

"(a) Tuition—high school.  *  *  *  There shall be apportioned to each school district of the State maintaining an approved high school  *  *  *  *in addition to the sums apportioned to such districts under sections 4 and 5 of this act,* the amount of the per capita high school operation cost of such district, as determined by the superintendent of public instruction in accordance with section 10 of this act, but not exceeding $100 per high school tuition pupil,  *  *  *  who shall have attended the high school in said district during the fiscal year ending June 30 preceding such apportionment."

In making apportionment of the school aid fund, it developed that certain districts would receive less than the 85 per cent. minimum fixed in the above-quoted proviso with which section 3 concludes. The superintendent of public instruction thereupon increased the appropriation to each of such districts to a sum equal to the 85 per cent. minimum, and he also added to the amount so obtained the high school tuition provided in section 6 (a) just above quoted. Plaintiffs assert that this addition of high school tuition was in contravention of the express provision of the statute. They point out that in computing the 85 per cent. minimum there was included (as the statute provides) the item of *tuition* along with the primary school interest fund and other items which constituted the total of the 1940–1941 appropriation. And they say in their brief:

"By increasing the allotment of a school district after computing the amount a school district is entitled to under the act, and increasing that amount to 85 per cent. of the amount received in 1940–1941, *and adding thereto an amount for tuition,* the super-

intendent has approximately duplicated the payment of high school tuition to that district. In giving to the district 85 per cent. of the amount received in 1940–1941 there already is included 85 per cent. of the tuition due the district, and by adding to the 85 per cent. in 1941–1942 an amount for tuition, he is making a second payment for the same purpose, towit, tuition, which was clearly not the intention of the act.''

If plaintiffs' contention is correct, they were injured by this alleged overpayment to certain other districts because the 1941–1942 appropriation (as well as the 1942–1943 appropriation) was not sufficient to cover in full the cost of rendering the act fully effective, and such shortage had to be apportioned among and borne by the respective districts. Notwithstanding the result stressed by plaintiffs, if the statute specifies a formula by which apportionment must be made, such is the rule and guide which must be followed. And this is true regardless of how many items may be doubled or trebled by so doing.

Little, if any, assistance is afforded in the instant case by the various rules of statutory construction said to be applicable to proviso clauses in legislative enactments. None of them can at all times be dogmatically followed. Instead the fundamental purpose must always be so to construe an enactment as to accomplish the intent and purpose of the legislature, but without violating the plain wording of the act. *Garwols* v. *Bankers Trust Co.*, 251 Mich. 420; *Liquor Control Commission* v. *Fraternal Order of Eagles*, 286 Mich. 32.

At the very outset of section 3 we find this plain provision: ''To every school district in the State, except as is otherwise provided in this act, *in addition to* the amounts allocated and paid for high school tuition under section 6 (a) of this act, there

shall be apportioned annually out of the school aid fund," et cetera. This provision seems clearly to direct the allocation of school funds in the manner provided in section 3 *"in addition to the amounts allocated"* for high school tuition elsewhere in the act. Obviously the only way in which a school district could obtain the high school tuition "in addition to the amounts allocated" to it under section 3 of the act would be to add the high school tuition to the amount allocated under section 3. Such is the construction placed upon this portion of section 3 by the superintendent of public instruction. But the construction for which plaintiffs contend would in effect delete from section 3 the words "in addition to the amounts allocated and paid for high school tuition under section 6 (a) of this act."

Further, in other sections of the act there are provisions which seem to negative the construction which plaintiffs assert should be adopted. Section 6 (a) above quoted plainly provides that the tuition which shall be apportioned to the several school districts shall be "in addition to the sums apportioned to such districts under sections 4 and 5 of this act." And section 18 of the act, which controls procedure in event the legislative appropriation is insufficient to finance in full the purposes of the act, provides: "The superintendent of public instruction shall, after all allotments for amounts  *  *  * for high school tuition under section 6 (a) of this act  *  *  * (and for certain other specified purposes) shall have been paid from the State aid fund, increase the amount of millage" for the purpose of apportioning the deficit. By our study of this act, we are convinced that plaintiffs' contention relative to this item of high school tuition is not tenable.

The plaintiffs in one of these combined cases assert that in another respect the apportionment of the school aid fund as made by the superintendent of

public instruction is not in accord with the provisions of the act. These plaintiffs have presented this second question as follows:

"Does Act No. 368, Pub. Acts 1941, require that any increase in deductible millage over and above 2.75 mills be applied to school districts receiving their State aid under the final proviso of section 3 of this act?

"Or, in other words, was the increase in deductible millage of .54 mills applied uniformly in all districts of the State as required by the act when the equalized assessed valuation of the 12 districts mentioned in paragraphs 16, 17, 18 and 19 of the petition and totaling $512,494,337 (assessed valuation) was excluded from the application of such increase?"

As used in the quoted question the word "increase" means an increase in the amount deducted from a district's apportionment which deduction was necessitated because the total appropriation to the school aid fund by the legislature was insufficient to fully finance or to fully put into effect the provisions of the act during a fiscal year. The statute in substance provides that this deduction shall be spread among the districts on the basis of their respective amounts of equalized assessed property valuations. To accomplish this the statute directs the superintendent of public instruction to determine the millage rate required to produce an amount which will equal the shortage or deficit in the legislative appropriation; and to add this millage rate to the "two and three-quarters mill tax" provided in section 3 hereinbefore quoted. This plan primarily contemplates that each school district which participates in the school aid fund shall bear its share of any deficit in such fund for each fiscal year.

For the 1941-1942 fiscal year there was a shortage of more than $2,500,000. This, under the computation of the superintendent of public instruction, necessitated an increased rate of .54 of a mill, thus raising the rate from 2.75 to 3.29 mills. But in making this computation the superintendent did not include the assessed value of the property in those 12 school districts which came within the minimum 85 per cent. proviso with which the above-quoted section 3 concludes. The equalized assessed value of the omitted districts was over $500,000,000. Had this assessed value been included in the computation of the superintendent the resultant rate of deduction from the appropriation to other school districts would have been approximately .04 of a mill less, and they would have participated in the school aid fund to the extent of many thousands of dollars more than they did under the computation and distribution made by the superintendent of public instruction; and the 12 school districts which are within the 85 per cent. minimum proviso of section 3 would have received less. By his method of administering this law the superintendent of public instruction did not require any of the 12 districts above mentioned to bear any portion of the shortage in the school aid fund. By his answer to the petition of these plaintiffs the superintendent of public instruction admits that he administered the law as above outlined and that he intends to administer this phase of the law in the same manner in his allocations of the fund for the fiscal year 1942-1943. These plaintiffs aver that the shortage in the school aid fund should be borne by all of the districts receiving school aid under the act; and that the method of computation and administration "on the part of the defendant superintendent of public in-

struction was illegal and void in that it violates the provisions of this act and particularly section 18 thereof where it is provided: 'That any increase in such millage shall be *uniform* in all districts of the State.' "

On the other hand defendants assert that the method adopted by the superintendent of public instruction is in accord with the statute, and in fact is required by the terms of the proviso with which section 3 of the act concludes, that being the section by which the formula for appropriation of the school aid fund is primarily fixed.

The issue arises from the fact that the act contains provisions in the particular under consideration which, if read literally, are in head-on conflict with each other. As just above noted, section 18 of the act which has to do with adjusting a deficit in the legislative appropriation provides that in making such adjustment, "any increase in such millage (as the basis of adjustment) *shall be uniform in all districts of the State.*" But in section 3 of the act, which as noted contains the formula for distribution of school aid funds, it is definitely provided: "That no school district having a school census of 800 or more shall be allotted annually during the biennium ending June 30, 1943 less than 85 per cent. of the actual amount received by said district during the school year 1940–1941." Clearly, as to the 12 districts named by these plaintiffs, if a deduction was made from their respective apportionments on account of the deficiency in the school aid appropriation, as these plaintiffs claim should have been done, then each of these 12 districts would receive a substantial amount less than the 85 per cent. provided in section 3 of the act. In fact, as urged on the oral argument and as pointed out in defendants' brief, under certain circumstances a school district which

came within the 85 per cent. minimum provision in section 3 would not participate at all in the distribution of the school aid fund, if such district was subject to minimization of its apportionment on account of a deficit in the school aid fund, in the manner asserted by these plaintiffs.

It is uncontroverted that neither the superintendent of public instruction nor any of the other defendants herein have any personal interest in the allotment of the school aid fund here involved; nor is there any charge that bad faith or ulterior motive has prompted the manner of allocation. Instead it appears that the superintendent of public instruction, who by section 19 of the act is charged with apportioning this fund, has proceeded with a great deal of care and has acted under the advice and direction of the attorney general. It is in this manner that the defendants have arrived at what they deem to be a just construction of the statute; and the administration of the law has proceeded accordingly. It is true that the construction placed upon the statute by administrative officials or agencies is not binding upon the court but if such construction is within the provisions of an act which by its very terms is obscure or ambiguous, such construction is entitled to consideration. From our consideration of the statute as a whole, we do not, find, as these plaintiffs contend, that the superintendent's method of determining millage for the purpose of adjusting the deficit in the legislative appropriation is in violation of the statute.

Throughout the decisions of this court from *People* v. *Judges of Jackson Circuit Court,* 1 Doug. (Mich.) 302, to *McLeod* v. *State Board of Canvassers, ante,* p. 120, there is an overabundance of authority for denial of mandamus unless he who seeks the remedy satisfies the court that the opposite

party has refused to perform a clear legal duty with the performance of which he is charged. Many such decisions are cited by Mr. Justice Boyles in *McLeod v. State Board of Canvassers, supra.* Tested by this well-established rule, plaintiffs in the instant case cannot prevail. Mandamus is denied. A public question being involved, no costs are awarded.

Boyles, C. J., and Chandler, Starr, Wiest, Butzel, Bushnell, and Sharpe, JJ., concurred.