CITY OF HIGHLAND PARK *v.* OAKLAND COUNTY DRAIN
COMMISSIONER.

1. DRAINS—BONDS—DEFICIENCY ASSESSMENT.
   Holders of serial bonds issued by drain district upon which
   principal and interest remain unpaid at last maturity are
   entitled to have proportionate deficiency assessment levied
   upon lands within district to which State had not acquired
   title for delinquency in payment of taxes (Act No. 316, chap.
   10, § 15, Pub. Acts 1923, as amended by Act No. 331, Pub.
   Acts 1927).

2. STATUTES—CONSTRUCTION—INTENT.
   A statute should be construed so as to give effect to the intent
   and purpose of the legislature.

3. DRAINS—STATUTES—DEFICIENCY—COUNTIES—REIMBURSEMENT OF
   GENERAL FUND—DEBT LIMITATION.
   Statute providing that deficiency on principal and interest on
   bonds issued by a drain district should be advanced by county
   out of its general fund to which fund reimbursement should
   be made out of drain taxes thereafter collected provided that
   such advancement by the county should not cause the county
   to exceed the constitutional debt limitation thereof did not
   provide that ability to obtain full reimbursement from drain
   taxes thereafter collected was a condition precedent to the
   bondholder's right to obtain payment of the deficiency from
   the county where such payment would not cause the total debt
   to exceed the constitutional limitation (Act No. 316, chap. 10,
   § 15, Pub. Acts 1923, as amended by Act No. 331, Pub. Acts
   1927).

4. SAME—BONDS—DEFICIENCY—COUNTIES—REIMBURSEMENT.
   Statute requiring county to pay from general fund any deficiency
   in drain fund in order to pay drain bonds did not intend to
   limit county's obligation on drain bonds to amount it might
   thereafter collect from the district but, since it recognized the
   necessity of establishing drains as a measure of public health

and welfare, it intended to make drain bonds a more attractive and safer investment by requiring county to pay the deficiency (Act No. 316, chap. 10, § 15, Pub. Acts 1923, as amended by Act No. 331, Pub. Acts 1927).

5. SAME—DEFICIENCY—COUNTY GENERAL FUND—REIMBURSEMENT.

The matter of probability or possibility of reimbursement from drain taxes for deficiency in drain fund required to be paid from county general fund need not be determined prior to payment of such deficiency from the latter fund and payment therefrom must be made as long as there is sufficient therein to make payment, even though reimbursement from drain taxes be impossible (Act No. 316, chap. 10, § 15, Pub. Acts 1923, as amended by Act No. 331, Pub. Acts 1927).

6. SAME—DEFICIENCY—COUNTY GENERAL FUND—REIMBURSEMENT.

A county which is obligated to pay any deficiency in outstanding drain bonds from the county general fund is entitled to the drain taxes thereafter collected, in full or partial reimbursement (Act No. 316, chap. 10, § 15, Pub. Acts 1923, as amended by Act No. 331, Pub. Acts 1927).

7. CONSTITUTIONAL LAW—STATUTES—PRESUMPTIONS.

A statute is presumed to be constitutional and every reasonable presumption or intendment must be indulged in favor of its constitutionality and it will not be declared invalid unless it clearly appears to violate some provision of the Constitution.

8. STATUTES—CONSTRUCTION—DRAINS—COUNTIES—DEFICIENCY.

An unforeseen change in economic conditions subsequent to the enactment of a statute imposing liability for deficiency on drain bonds upon a county general fund, which resulted in an abnormal tax delinquency and in the State's acquiring title to more than half the land in a drainage district, cannot be considered either in construing the statute or in determining its constitutionality (Act No. 316, chap. 10, § 15, Pub. Acts 1923, as amended by Act No. 331, Pub. Acts 1927).

9. DRAINS—DEFICIENCY—DEPLETION OF COUNTY GENERAL FUND—CONSTITUTIONAL LAW.

Statute requiring county to pay deficiency on outstanding drain bonds from the county general fund is not unconstitutional merely by reason of the fact that such payment would result in some depletion of that fund and might require an increase in the county's general tax budget for the ensuing year (Act No. 316, chap. 10, § 15, Pub. Acts 1923, as amended by Act No. 331, Pub. Acts 1927).

10. STATUTES—SUPREME COURT—LEGISLATURE.
    It is not within the province of the Supreme Court to consider the wisdom of a statute but only to ascertain the legislature's power to enact it.

11. SAME — DRAINS — COUNTIES — DEFICIENCY — LEGISLATURE — TAXATION—CREDITS—INTERNAL IMPROVEMENTS—CONSTITUTIONAL LAW.
    In enacting a statute directing a county to pay deficiency in bonds of a drainage district, the legislature properly exercised its plenary power and did not impose, continue or revive a tax, grant a credit, or require a county to engage in a work of internal improvement in violation of the Constitution (Const. 1908, art. 10, §§ 6, 12, 14; Act No. 316, chap. 10, § 15, Pub. Acts 1923, as amended by Act No. 331, Pub. Acts 1927).

12. SAME—TITLE OF ACT—DRAINS—DEFICIENCY—COUNTIES.
    The title of the general drain law is not violative of the pertinent provision of the Constitution and the object stated therein is sufficient to embrace a provision requiring a county to pay from its general fund any deficiency in outstanding drain bonds (Const. 1908, art. 5, § 21; Act No. 316, chap. 10, § 15, Pub. Acts 1923, as amended by Act No. 331, Pub. Acts 1927).

13. COUNTIES—DRAIN BONDS—DEFICIENCY FROM GENERAL FUND.
    Upon surrender of overdue outstanding drain bonds and interest coupons, a county treasurer is required to pay the amount available toward payment thereof from that available from its respective drainage district fund and the balance or deficiency from the county general fund (Act No. 316, chap. 10, § 15, Pub. Acts 1923, as amended by Act No. 331, Pub. Acts 1927).

14. COSTS—PUBLIC QUESTION—LIABILITY OF COUNTY GENERAL FUND FOR DEFICIENCY ON DRAIN BONDS.
    No costs are allowed in mandamus proceeding to determine liability of general fund of county for payment of deficiency on drain bonds, a public question being involved (Act No. 316, chap. 10, § 15, Pub. Acts 1923, as amended by Act No. 331, Pub. Acts 1927).

Appeal from Oakland; Holland (H. Russel), J. Submitted June 5, 1945. (Calendar No. 42,996.) Decided October 8, 1945.

Petition by City of Highland Park for a writ of mandamus against Earl L. Clark, Drain Commissioner of Oakland County, and others to compel payment of amount of bonds and interest from general fund of county. Writ granted in part. Plaintiff reviews by appeal in nature of certiorari. Reversed and remanded for issuance of writ to compel payment of amount of balance of drainage fund and balance from general fund of county.

*Voorhies, Long, Ryan & McNair,* for plaintiff.

*Harry J. Merritt,* Corporation Counsel of Oakland County, for defendants.

*Alex J. Groesbeck, Hugh Francis* and *Bernard F. Powell,* for County of Macomb and others, *amici curiae.*

STARR, C. J. Plaintiff, as the owner of certain bonds of the Southfield No. 6 storm sewer drain district, began the present mandamus action to compel the treasurer of Oakland county to pay the deficiency on said bonds from the county's general fund. Having obtained leave, it appeals from an order denying the relief sought. Questions are presented which require us to construe and determine the constitutionality of Act No. 316, chap. 10, § 15, Pub. Acts 1923, as amended by Act No. 331, Pub. Acts 1927, which provides in part:

"In case the amount available in the drain fund shall be insufficient to pay the principal or interest of any such bonds heretofore or hereafter issued when they become due *the same shall be advanced and paid by the county out of its general funds and reimbursement to said general fund shall be made out of the drain taxes thereafter collected,* provided

that such advancement by the county shall not cause the total debt of the county to exceed the constitutional limitation thereof.''

Substantially all of the material facts involved are stipulated. The drain district comprised 297 platted lots and an unplatted parcel of about 33 acres in Oakland county. On February 1, 1928, the district issued bonds in the amount of $45,000 to provide funds for the construction of a storm sewer drain. The issue consisted of 45 bonds in the amount of $1,000 each, maturing serially during a period of 10 years, the last maturity being May 1, 1938. They provided for interest at 5½ per cent., payable semiannually on May 1st and November 1st of each year. The bonds contained the following provision, which substantially embodied the above-quoted portion of the statute:

''The principal and interest of this bond are payable out of the instalments of drain taxes assessed against the lands in said district and against the county of Oakland and the township of Southfield at large, in proportion to their respective taxation for such improvement as follows: lands in district 89 per cent., Oakland county 1 per cent., Southfield township 10 per cent. and are issued for the payment of the cost of construction of the Southfield No. 6 storm sewer drain in the township of Southfield in said Oakland county, * * * and *in case the amount available in the drain fund for said drain shall be insufficient to pay the principal or interest of any of such bonds when they become due the same shall be advanced and paid by the county of Oakland out of its general funds and reimbursement to said general fund shall be made out of the drain taxes thereafter collected,* provided that such advancement by the county shall not cause the total debt of the county to exceed the constitutional limitation thereof.''

In March, 1928, plaintiff purchased $19,000 in amount of said bonds and $16,000 were subsequently purchased by Oakland county. The remaining $10,-000, which matured on and prior to May 1, 1931, were sold and were redeemed at maturity. All bonds owned by plaintiff and Oakland county have matured and remain unpaid. No interest has been paid since May 1, 1931. Subsequently, all the un-platted acreage and 179 of the 297 lots in said district were sold to the State of Michigan for delinquent taxes, leaving only 118 lots which would be subject to a deficiency assessment under our holding in *Keefe* v. *Oakland County Drain Commissioner*, 306 Mich. 503. It was agreed that the 118 lots represented 41.175 per cent. of the land on the original assessment roll of the district. The amount of principal and interest (computed to May 1, 1945) remaining due on the district's outstanding bonds is $61,950. Plaintiff and Oakland county are the only parties interested as creditors of the drain district. The financial status of the district and the probable deficiency in funds required to pay its outstanding bonds and interest are shown by the following stipulated facts:

"Assuming that an additional deficiency assessment were levied in 1944, the following approximate figures show the amount of the same and the approximate maximum recoveries which could be expected therefrom:

"Principal of bonds................$35,000.00
"Interest to 5/1/45................. 26,950.00
                                      ----------
                                     $61,950.00
"Cash in (drainage district) fund.... 17,014.63
                                      ----------
"Additional deficiency assessment..$44,935.37

"Only 41.175 per cent. (of the deficiency assessment) could be collected because of the fact that levies cannot be made against lands which passed to the State, hence the maximum amount which could

be expected from this levy would be $18,502.04. On the basis of the amount in the fund, plus estimates of the amounts which may be recovered from an additional levy and from future receipts from the State land office board, the maximum recoveries are as follows:

"Amount in fund..................$17,014.63
"Estimated maximum returns from
   additional assessment .......... 18,502.04
"Estimated returns from State land
   office board .................... 1,764.75
                                  $37,281.42"

It was agreed that approximately $5,838.60 of an additional assessment probably could not be collected, which would leave a balance of only $31,442.-82 as the maximum amount available from the drainage district for payment on the bonds in question. There was approximately $224,578 in the county's general fund, and if the deficiency on the drainage district's outstanding bonds, over and above its estimated available funds, were paid from the general fund, it would necessitate an increase in the county's general tax budget to replenish the fund.

On September 27, 1943, plaintiff tendered its unpaid bonds and interest coupons to the county treasurer and demanded payment, which was refused. On September 30th it filed petition in circuit court for a writ of mandamus to compel the treasurer to pay the amount due on said bonds and coupons from "either the fund of said drain, or the general fund of said county, or both." Defendants answered, admitting the issuance of the bonds held by plaintiff and default in the payment of principal and interest. In their answer they conceded plaintiff's right to a proportionate deficiency assessment as to the lands in the district which had not been acquired by the State. *Keefe v. Oakland County Drain Commissioner, supra.* However, they denied plaintiff's

right to have the deficiency on its bonds paid out of the county's general fund, on the ground that the statute quoted above * required the county to pay only such amount as it could obtain in reimbursement from the drainage district. They also contended that if said statute was construed to require the county to pay the full deficiency from its general fund, it would be unconstitutional, as violating Const. 1908, art. 5, § 21, and art. 10, §§ 6, 12, and 14.

The trial judge held that the statute required the county to pay from its general fund only the amount which it could obtain through reimbursement from the drainage district. On the basis of this construction he held it to be constitutional. He further held that if the statute were construed to require the county to pay the full deficiency on the drainage bonds from its general fund, it would be unconstitutional. In his opinion he said in part:

"The legislature, when Act No. 331, Pub. Acts 1927, was passed, did not contemplate the widespread tax delinquencies which did follow, and
*   *   *

"Did not intend that the county would be compelled to advance from 40 per cent. to 70 per cent. of the cost of drains, which ran into huge sums of money without the possibility of reimbursement, because if the legislature did so intend

"a. The advancement statute (chapter 10, § 15) would result in a general tax on the county at large, which would make the act unconstitutional in its present form, being violative of Const. 1908, art. 10, § 6, and art. 5, § 21.

"b. It would have put the county in the position of being unconstitutionally engaged in works of internal improvement prohibited by Const. 1908, art. 10, § 14.

---

* Act No. 316, chap. 10, § 15, Pub. Acts 1923, as amended by Act No. 331, Pub. Acts 1927.

"c.  It would have required the counties to unconstitutionally lend their credit to private or public enterprise, prohibited by Const. 1908, art. 10, § 12.

"This court cannot presume the legislature had any such intention and is forced to the conclusion that the legislature intended reimbursement to follow advancement."

In his order directing the issuance of a writ of mandamus to compel a deficiency assessment on lands in the drainage district which had not passed to the State, the trial judge said in part:

"Computing the amounts now in the drain fund, plus future additions thereto as a result of the deficiency assessment and collections from the State land office board, the total amount which can be made distributable to holders of bonds will be the sum of $31,442.91, or $898.37 per bond.  *  *  *

"Inasmuch as the court is of the opinion that *  *  *  (the statute) * is subject to the limitation that the county shall not be obliged to advance moneys from its general fund, unless reimbursement thereto can be made from drain taxes thereafter to be collected, and inasmuch as the court finds that $898.37 per bond is the maximum amount which can be paid to bondholders, without exceeding such limitation, it is determined that holders of bonds, who surrender them, are entitled to the payment of said sum per bond from moneys in the general fund and the fund of said drain."

His order directing the drain commissioner to certify a deficiency assessment against lands in the district which had not passed to the State and against the county and township at large, and directing the board of supervisors to spread the deficiency assessment, also directed the county treasurer as follows:

"To pay to such bondholders as surrender their bonds for cancellation the sum of $898.37 per bond,

* See footnote, *ante*, 414.

employing for that purpose moneys in the drain fund, and adding thereto such additional moneys as may be necessary by withdrawal of same from the county's general fund, or in the alternative, if such bonds are not surrendered for cancellation upon payment of the foregoing sum, to pay to such bondholders from time to time as money is in the drain fund their proportionate share of same."

Plaintiff appeals from this order. The statute, chapter 10, § 15, quoted above, should be construed so as to give effect to the intent and purpose of the legislature. *Laughery* v. *County of Wayne,* 307 Mich. 316; *Detroit Board of Education* v. *Superintendent of Public Instruction,* 304 Mich. 206.

We cannot agree with the holding of the trial judge that the statute required the county to pay only the amount which it could recover by reimbursement from the drainage district. In plain and mandatory terms the statute provided that the county "shall" pay the deficiency on drain bonds from its general fund, and the only condition is that the payment shall not cause the county debt "to exceed the constitutional limitation thereof." The ability of the county to obtain full reimbursement from drain taxes thereafter collected was not a condition precedent to its obligation to pay the deficiency. The payment of the deficiency on the outstanding bonds in question would not cause the total debt of Oakland county to exceed the constitutional limitation. It is clear that, recognizing the necessity of establishing drains as a measure of public health and welfare, the legislature intended to make drain bonds a more attractive and safer investment by requiring a county to pay from its general fund any deficiency accruing on said bonds. It did not intend to limit the county's obligation on drain bonds to the amount of drain taxes it might thereafter collect from the district.

A statutory provision identical to that involved in the present case was considered in *Regents of University of Michigan* v. *Pray,* 264 Mich. 693. In that case the plaintiff had purchased bonds issued in connection with the construction of a drain in Washtenaw county. The district defaulted in the payment of principal and interest due on certain matured bonds. There was practically no money in the drainage district's fund, and the general fund of the county was not sufficient for its ordinary operating expenses for the current year. Plaintiff began mandamus proceedings to compel the county to pay the amount due on the matured drain bonds from the county's general fund. In affirming the granting of mandamus, we said (pp. 701–703):

"There still remains to be considered appellants' contention that because there was not sufficient money in the general county fund to cover the expenses of the county's governmental activities for the current year, refusal to pay these drain bonds from such general fund was justified. The opinion of the trial judge disposes of this phase of the case in the following language: * * *

" 'That portion of the statute under discussion is mandatory. *It expresses the clear legislative intent that when the amount available in the drain fund shall be insufficient to pay the principal or interest of any drainage bonds heretofore or hereafter issued when they become due, the same shall be advanced and paid by the county out of its general funds.* * * *

" 'It simply states that bondholders shall be paid out of the general fund and that reimbursement shall be made. *The wording does not indicate that the legislature intended that the probability or possibility of reimbursement should be determined prior to any payment for the purposes mentioned out of the general fund.* * * *

" 'It is my further opinion that, under the case of *Moore* v. *Harrison*, 224 Mich. 512, and the later case of *Township of Waterford* v. *Willson*, 257 Mich. 619, that the question of the depletion of the county funds does not enter into the discussion, in view of the statute, which is here upheld, and which provides for no exceptions or limitations upon the use of funds to all practical intents and purposes included in the general fund for the purpose stated.'

"Both on the date of instituting suit and on the date of hearing, there was in the Washtenaw county general fund money greatly in excess of the amount of the payment sought by plaintiff. * * * Plaintiff is clearly entitled to payment, and likewise *the duty of respondents as public officers to make such payment out of moneys in the county's general fund is clearly and specifically imposed by statute.*"

In the case of *Graves* v. *Bliss,* 235 Mich. 364, plaintiffs held two drain orders issued for labor in connection with the construction of a drain in Midland county. Certain lands in the drainage district had been sold to the State for delinquent taxes, and the drain fund was exhausted. Plaintiffs' demands for payment from the county were refused, and they began mandamus proceedings to compel the county treasurer to make payment from the general fund. The statute involved (Act No. 316, chap. 9, § 4, Pub. Acts 1923, as amended by Act No. 365, Pub. Acts 1925) gave the holder of a drain order the right to require payment from the county's general fund if the drain fund was insufficient "because of delinquency in the payment of drain taxes after the lands on which the said taxes shall have become delinquent have been offered for sale," and further provided that "all delinquent drain taxes * * * shall be credited to the general fund until the same is reimbursed." The record showed that if the

county paid plaintiffs' drain orders, it would be impossible for it to obtain reimbursement from the drainage district. In affirming the trial court's order granting mandamus to compel payment from the general fund, we said:

"*The record here shows that reimbursement is impossible. The statute does not make payment of such orders from the general fund depend upon the power to reimburse.* It was contemplated that there would be reimbursement either from a. redemption or sale of the delinquent lands, *but payments from the general fund were not contingent on the ability of the county to reimburse itself.*"

A situation analogous to that in the present case was considered in *City of Highland Park* v. *Dearborn Township,* 285 Mich. 440. In that case the plaintiff began suit against the township to recover on certain matured, special-assessment .district bonds issued for the construction of water and sewer improvements. Said bonds were issued in pursuance of 1 Comp. Laws 1929, § 2387, which provided in part:

"If any such special assessment fund is insufficient to pay such bonds and interest thereon when due, the township board shall advance the amount necessary to pay such bonds, and shall be reimbursed from such assessments when collected, or by reassessment of the deficiency if necessary."

In affirming a decree for plaintiff and holding the act constitutional, we said (pp. 444, 445, 447, 448):

"Appellant's, (township's) contention that the provision above quoted from section 3 of the statute is unconstitutional cannot be sustained. * * *

"By the statute under consideration the legislature has authorized townships to issue special assessment bonds but upon the condition that in

case the special assessment fund is insufficient to pay the bonds and interest thereon then the township at large shall be liable for their payment. The quoted statutory provision does not attempt to compel a township, acting through its officers, to authorize the issuance of district special assessment bonds, but if a township elects to do so, the legislature by Act No. 58, Pub. Acts 1927,* renders such bonds payable out of the township's general funds in event the 'special assessment fund is insufficient.' Such a statutory provision is not unconstitutional on the ground that it is an unwarranted interference by the legislature in a matter of purely local concern. * * *

"Counsel have stipulated that 'the township of Dearborn could not recover any funds which it advanced to pay these bonds by means of a reassessment in the special assessment districts, or through tax sale of such lands.' Notwithstanding counsel's stipulation, still the township's obligation is neither canceled nor modified. * * *

" 'The statute does not make payment of such orders from the general fund depend upon the power to reimburse. * * * Payments from the general fund were not contingent on the ability of the county to reimburse itself.' Graves v. Bliss, 235 Mich. 364. * * *

"The township authorized issuance of these bonds. It received the money paid for the bonds by the bondholders, and the township used this money in paying for public improvements made in the township. The statute was then in force under which plaintiffs now seek payment of the bonds. The statute plainly provided that in event the special assessment fund proves insufficient to pay matured bonds 'the township board shall advance the amount necessary to pay such bonds.' "

---

* Act No. 116, § 3, Pub. Acts 1923, as amended by Act No. 58, Pub. Acts 1927, is 1 Comp. Laws 1929, § 2387.

See, also, *Township of Royal Oak* v. *City of Pleasant Ridge*, 295 Mich. 284; *Whitman* v. *Township of Royal Oak*, 269 Mich. 146; *Moore* v. *Harrison*, 224 Mich. 512; *State, ex rel. Bowman*, v. *Allen County Board of Com'rs*, 124 Ohio St. 174 (177 N. E. 271); *Marks* v. *City of Mandan*, 70 N. D. 474 (296 N. W. 39).

In pursuance of the above-discussed and cited authorities we accordingly construe the statute involved in the present case to mean that Oakland county is obligated to pay from its general fund any deficiency on the outstanding bonds of the drainage district and will be entitled to the drain taxes thereafter collected, in full or partial reimbursement.

The statute in question is presumed to be constitutional, and every reasonable presumption or intendment must be indulged in favor of its constitutionality. In *Cady* v. *City of Detroit*, 289 Mich. 499, 505, we said:

"A statute will be presumed to be constitutional by the courts unless the contrary clearly appears; and in case of doubt every possible presumption not clearly inconsistent with the language and the subject matter is to be made in favor of the constitutionality of legislation. * * * Every reasonable presumption or intendment must be indulged in favor of the validity of an act, and it is only when invalidity appears so clearly as to leave no room for reasonable doubt that it violates some provision of the Constitution that a court will refuse to sustain its validity. A statute is presumed to be constitutional and it will not be declared unconstitutional unless clearly so, or so beyond a reasonable doubt."

The unforeseen change in economic conditions subsequent to the enactment of the statute, which

resulted in abnormal tax delinquency and in the State's acquiring title to more than 50 per cent. of the land in the drainage district, cannot be considered either in construing the statute or in determining its constitutionality. Furthermore, the fact that the county's payment from its general fund of the deficiency on the outstanding drain bonds would result in some depletion of that fund and might require an increase in the county's general tax budget for the ensuing year, is not a sufficient reason for holding the statute in question unconstitutional. *Moore* v. *Harrison, supra.*

It is not within our province to consider the wisdom of the statute, but only to ascertain the legislature's power to enact it. *Oakland County Drain Com'r* v. *City of Royal Oak,* 306 Mich. 124. In the proper exercise of its plenary power, the legislature directed one unit of county government to use its funds in the aid of another unit. The statute did not impose, continue or revive a tax in violation of Const. 1908, art. 10, § 6. *Moore* v. *Harrison, supra.* It did not operate as a grant of credit in violation of art. 10, § 12. It did not require the county to engage in a work of internal improvement in violation of art. 10, § 14. Its title was sufficient and not violative of art. 5, § 21. *Regents of University of Michigan* v. *Pray, supra.* Other questions presented do not require consideration.

We conclude that the statute in question, as we have construed it, is constitutional and a proper exercise of legislative authority. The order of the trial court is vacated and set aside. The case is remanded with direction to issue writ of mandamus, if necessary, to compel the treasurer of Oakland county to pay plaintiff, upon surrender of its bonds and interest coupons, the amount determined to be available in said drainage district fund, and also to

pay plaintiff from the general fund of the county the balance or deficiency determined to be due on said bonds and coupons.   Public questions being involved, no costs are allowed.

NORTH, BUTZEL, BUSHNELL, SHARPE, BOYLES, and REID, JJ., concurred.   The late Justice WIEST took no part in the decision of this case.